**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. _____ - CV - _____**

R.K.G.*

M.R.H.*

A.M.R.G.*

S.R.C.*

R.P.R.*

P.R.S.G.*

R.O.G.R.*

A.G.T.*

A.M.C.*

C.O.T.M.*

E.J.C.*

D.M.F.*

M.C.A.*

D.A.S.*

Y.P.R.*

E.M.M.R.*

T.M.J.F.*

R.R.*

R.A.G.A.*

        Plaintiffs,

    v.

1

Derek D. Barrs, Administrator, Federal Motor
Carrier Safety Administration, in his official
capacity,

Federal Motor Carrier Safety Administration
("FMCSA"), an agency of the U.S. Department
of Transportation,

Sean P. Duffy, Secretary, U.S. Department of
Transportation, in his official capacity,

U.S. Department of Transportation ("USDOT"),

Dave Kerner, Executive Director, Florida
Highway Safety and Motor Vehicles,

Florida Highway Safety and Motor Vehicles
("FLHSMV"),

        Defendants.

_____/

*Plaintiffs proceedings under a pseudonym are indicated with an asterisk.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
**JOINT ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 20 AND 42**

**INTRODUCTION**

1. This is a civil action brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; the Due Process Clause of the Fifth Amendment to the United States Constitution; the Equal Protection component of the Fifth Amendment; the Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983; the Florida Administrative Procedure Act, Fla. Stat. Ch. 120 *et seq.*; and Article I, Sections 2 and 9 of the Florida Constitution.

2. Plaintiffs are nineteen (19) commercial motor vehicle ("CMV") operators who hold, or have applied for the issuance or renewal of, non-domiciled Commercial Driver's Licenses

("CDLs") or Commercial Learner's Permits ("CLPs") issued by the State of Florida through the Florida Department of Highway Safety and Motor Vehicles ("FLHSMV"). Each Plaintiff is domiciled in a foreign jurisdiction but resides in, and operates commercial vehicles within, the State of Florida. Plaintiffs are properly joined in this action pursuant to Federal Rule of Civil Procedure 20(a) because their claims arise out of the same series of transactions and occurrences and present common questions of law and fact.

3.  Plaintiffs challenge two interrelated governmental actions that have deprived them of their commercial driving privileges, their livelihoods, and their constitutional rights: (a) **The Federal Action:** The Federal Motor Carrier Safety Administration's ("FMCSA") promulgation of an interim final rule ("IFR") titled *Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses*, 90 Fed. Reg. 46,509 (Sept. 29, 2025), which severely restricts the authority of State Driver's Licensing Agencies ("SDLAs") to issue and renew non-domiciled CLPs and CDLs to individuals domiciled in foreign jurisdictions, and FMCSA's subsequent Final Rule, 91 Fed. Reg. 7044 (Feb. 13, 2026), which reaffirmed the IFR's categorical restrictions with only cosmetic modifications; and (b) **The State Action:** FLHSMV's ongoing and indefinite "pause" on the issuance, renewal, and extension of non-domiciled CDLs and CLPs, which FLHSMV has maintained even after the United States Court of Appeals for the District of Columbia Circuit issued a stay pending review of the IFR on November 13, 2025, preventing the IFR from taking effect until further notice.

4.  Despite the D.C. Circuit's stay — which restored the legal status quo ante and explicitly provided that "States are not prohibited from issuing non-domiciled CDLs and commercial learner's permits in accordance with the FMCSA's regulations and guidance in effect immediately prior to issuance of the interim final rule" — FLHSMV continues to refuse to

process, issue, or renew non-domiciled CDLs and CLPs for Plaintiffs and thousands of similarly situated Florida drivers. FLHSMV's continued refusal is predicated upon a "corrective action plan" imposed by FMCSA, which itself is a product of the unlawful IFR and FMCSA's regulatory overreach.

5. The combined effect of the Federal Defendants' and State Defendants' actions has been catastrophic for Plaintiffs: they cannot work, they cannot earn a living, they face financial ruin, and they have been deprived of vested property and liberty interests without due process of law — all without any individualized determination of fault, misconduct, or safety concern. Plaintiffs have lost employment, defaulted on mortgages and other financial obligations, and been unable to provide for their families. The harm is ongoing and irreparable.

6. Plaintiffs seek: (a) a declaration that the FMCSA's Final Rule, 91 Fed. Reg. 7044, violates the federal APA and the United States Constitution; (b) a declaration that FLHSMV's continued "pause" violates the Florida APA and the Florida and United States Constitutions; (c) vacatur of the Final Rule and the Corrective Action Plan; (d) a preliminary and permanent injunction requiring FLHSMV to immediately resume processing, issuing, and renewing non-domiciled CDLs and CLPs under the regulations and guidance in effect prior to the IFR; (e) consolidation of Plaintiffs' claims for trial pursuant to Federal Rule of Civil Procedure 42(a); and (f) all other relief this Court deems just and proper.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the Constitution and laws of the United States,

including the APA, 5 U.S.C. §§ 551 et seq.; the Fifth and Fourteenth Amendments to the United States Constitution; and 42 U.S.C. § 1983.

8. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as the federal claims and are so related that they form part of the same case or controversy.

9. This Court has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. §§ 2201–2202.

10. This Court has jurisdiction to review final agency action of FMCSA pursuant to the APA, 5 U.S.C. §§ 702, 704, and 706.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (e) because: (a) a substantial part of the events or omissions giving rise to the claims occurred in this District; (b) Plaintiffs reside in and hold or seek to hold CDLs issued in this District; (c) FLHSMV operates offices and service centers in this District where CDL applications are processed; and (d) the Federal Defendants are officers or agencies of the United States sued in their official capacities.

12. This action is timely. The challenged federal and state actions are ongoing and continuing. Plaintiffs' claims challenge both the legality of final agency action (the Final Rule, 91 Fed. Reg. 7044, and the CAP) and the continuing unlawful conduct of FLHSMV in maintaining the pause. The injuries are ongoing and accruing daily.

## PARTIES

### *Plaintiffs*

13. Plaintiff R.K.G.[1] is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL

---

[1] A motion for leave of the Court for Plaintiffs to proceed under pseudonyms is being filed imminently.

for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on June 3, 2026. *See Exhibit ("Exh.") A*. As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

14. Plaintiff M.R.H. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on June 12, 2026. *See Exh. B*. As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

15. Plaintiff A.M.R.G. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on August 21, 2026. *See Exh. C*. As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe

economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

16. Plaintiff S.R.C. is a resident of Hillsborough County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL expired on April 8, 2026. *See Exh. D*. As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

17. Plaintiff R.P.R. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on May 9, 2026. *See Exh. E*. As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

18. Plaintiff P.R.S.G. is a resident of Hillsborough County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL.

Plaintiff holds valid and unexpired Employment Authorization, but his CDL expired on October 30, 2025. *See Exh. F*. As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

19. Plaintiff R.O.G.R. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on July 21, 2026. *See Exh. G*. As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

20. Plaintiff A.G.T. is a resident of Duval County, Jacksonville, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on July 17, 2026. *See Exh. H*. As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property

and liberty interests.

21. Plaintiff A.M.C. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL expired on March 10, 2026. *See Exh. I.* As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

22. Plaintiff C.O.T.M. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on June 11, 2026. *See Exh. J.* As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

23. Plaintiff E.J.C. is a resident of Martin County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on May 2,

2026. *See Exh. K.* As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

24. Plaintiff D.M.F. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on May 29, 2026. *See Exh. L.* As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

25. Plaintiff M.C.A. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL expired on April 9, 2026. *See Exh. M.* As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

26. Plaintiff D.A.S. is a resident of Miami-Dade County, Florida. He holds a non-domiciled

CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on May 15, 2026. *See Exh. N.* As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

27. Plaintiff Y.P.R. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on July 29, 2026. *See Exh. O.* As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

28. Plaintiff E.M.M.R. is a resident of Hillsborough County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on August 18, 2026. *See Exh. P.* As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable

to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

29. Plaintiff T.M.J.F. is a resident of Broward County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on May 20, 2026. *See Exh. Q.* As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

30. Plaintiff R.R. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on May 30, 2026. *See Exh. R.* As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

31. Plaintiff R.A.G.A. is a resident of Orange County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired Employment Authorization, but his CDL will expire on August

13, 2026. *See Exh. S*. As a direct result of Final Rule 91 FR 7044, and due to FLHSMV's pause on issuing and renewing non-domiciled CDLs, Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests.

### Federal Defendants

32.   Derek D. Barrs is sued in his official capacity as Administrator of the FMCSA. In this capacity, Administrator Barrs is responsible for the administration and enforcement of FMCSA's regulations, including the challenged Final Rule and the corrective action plans imposed on the states.

33.   Federal Motor Carrier Safety Administration ("FMCSA") is an agency within the United States Department of Transportation, established by 49 U.S.C. § 113. FMCSA is responsible for regulating the safety of commercial motor vehicle operations and administering the federal CDL program under 49 U.S.C. §§ 31301 et seq. and 49 C.F.R. Parts 383 and 384. FMCSA promulgated the challenged Final Rule.

34.   Sean P. Duffy is sued in his official capacity as Secretary of the United States Department of Transportation. Secretary Duffy exercises supervisory authority over FMCSA and its regulatory actions.

35.   United States Department of Transportation ("USDOT") is a department of the executive branch of the United States Government, headed by the Secretary of Transportation. USDOT exercises supervisory authority over FMCSA.

### State Defendants

13

36. Dave Kerner is sued in his official capacity as Executive Director of FLHSMV. In this capacity, Executive Director Kerner is the chief executive officer of FLHSMV and is responsible for the agency's policies and actions, including the challenged pause on non-domiciled CDL/CLP issuance.

37. Florida Department of Highway Safety and Motor Vehicles ("FLHSMV") is an agency of the State of Florida established under Chapter 20, Florida Statutes. FLHSMV is the state agency responsible for issuing, renewing, and regulating driver's licenses in the State of Florida, including non-domiciled CDLs and CLPs. FLHSMV is the SDLA for the State of Florida.

## FACTUAL ALLEGATIONS

### I. The Federal CDL Program and Non-Domiciled CDLs

38. Congress enacted the Commercial Motor Vehicle Safety Act of 1986, 49 U.S.C. §§ 31301 et seq., to improve the safety of commercial motor vehicle operations by establishing a uniform, nationwide system for licensing commercial drivers.

39. Under the federal CDL program, each state is designated as an SDLA and is responsible for testing and licensing commercial drivers who are "domiciled" in that state. 49 C.F.R. § 383.71.

40. Federal regulations have long recognized that certain individuals who are lawfully present in the United States but "domiciled" in a foreign country may nonetheless need to obtain a CDL to work as commercial motor vehicle operators in the United States.

41. To address this need, federal regulations authorized SDLAs to issue "non-domiciled" CLPs and CDLs to individuals who are domiciled in a foreign jurisdiction but who have established

a state of residence in the issuing state. See 49 C.F.R. §§ 383.5, 383.71(f).

42. For years, Florida — through FLHSMV — lawfully issued non-domiciled CDLs and CLPs to thousands of qualified individuals who met all applicable federal and state requirements, including identity verification, lawful presence verification, skills and knowledge testing, and medical certification.

43. The non-domiciled CDL program has been critical to the commercial transportation industry in Florida and nationwide. An estimated 16,000 to 20,000 Florida-based CDL holders who are domiciled in foreign jurisdictions drive trucks, buses, and other commercial vehicles that move goods and passengers throughout the state and across the nation. The disruption of this workforce has caused and continues to cause significant harm to interstate commerce.

## II. The FMCSA Regulatory Actions: From Interim Final Rule to Final Rule

44. On September 29, 2025, FMCSA published an interim final rule titled *Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses*, 90 Fed. Reg. 46,509 (the "IFR").

45. The IFR severely restricts the authority of SDLAs to issue and renew non-domiciled CLPs and CDLs to individuals domiciled in a foreign jurisdiction.

46. FMCSA promulgated the IFR as an "interim final rule" — bypassing the notice-and-comment rulemaking procedures required by the APA, 5 U.S.C. § 553 — claiming that "good cause" existed to dispense with prior notice and comment.

47. The IFR was promulgated without providing affected CDL holders, SDLAs, or the trucking industry with prior notice or a meaningful opportunity to comment before the rule took effect, in violation of the APA's notice-and-comment requirements. This procedural failure is particularly significant given that the non-domiciled CDL program had been in operation for

decades and affected tens of thousands of individuals and their families.

48.   The IFR's purported justifications — "restoring integrity" and "enhancing safety" — are unsupported by the rulemaking record. FMCSA failed to provide adequate data, evidence, or analysis demonstrating that the existing non-domiciled CDL program posed a genuine safety risk or lacked integrity. The agency presented no evidence of increased accident rates, safety incidents, or fraud attributable to non-domiciled CDL holders as a class.

49.   The IFR was arbitrary and capricious in violation of the standard established by Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 43 (1983), because FMCSA:

   a)   Failed to consider the reliance interests of thousands of CDL holders who had lawfully obtained their licenses under the existing framework, in direct contravention of *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), and *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016);

   b)   Failed to consider the devastating economic impact on affected drivers and the transportation industry;

   c)   Departed from longstanding agency practice without reasoned explanation;

   d)   Failed to examine the relevant data and articulate a satisfactory explanation for its action, as required by State Farm, 463 U.S. at 43;

   e)   Failed to adequately consider the safety implications of suddenly removing thousands of trained, tested, and qualified commercial drivers from the workforce.

50.   The IFR was motivated, in whole or in substantial part, by considerations unrelated to commercial motor vehicle safety, and its categorical restrictions disproportionately burden individuals domiciled in foreign jurisdictions — a classification that overwhelmingly

16

impacts immigrants and individuals of particular national origins — rather than advancing legitimate safety or regulatory concerns.

### III. The D.C. Circuit Stay

51. Multiple parties — including affected CDL holders, industry groups, and state officials — challenged the IFR in the United States Court of Appeals for the District of Columbia Circuit.

52. On November 13, 2025, the D.C. Circuit issued a stay pending review of the IFR, preventing the IFR from taking effect until further notice.

53. The D.C. Circuit's stay restored the legal status quo that existed before the IFR's publication. Under the stay, "States are not prohibited from issuing non-domiciled CDLs and commercial learner's permits in accordance with the FMCSA's regulations and guidance in effect immediately prior to issuance of the interim final rule."

54. Notwithstanding the D.C. Circuit's stay of the IFR, FMCSA published a final rule on February 13, 2026, at 91 Fed. Reg. 7044, effective March 16, 2026, titled "Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)" (the "Final Rule"). The Final Rule reaffirms, with only minor modifications, the substance of the previously stayed IFR. Rather than cure the deficiencies identified by the D.C. Circuit — including the failure to demonstrate a safety nexus, the failure to consult with states, and the failure to consider reliance interests — FMCSA doubled down on the same categorical exclusion.

55. The Final Rule restricts eligibility for non-domiciled CLPs and CDLs exclusively to holders of three narrow categories of employment-based nonimmigrant visas: H-2A (Temporary Agricultural Workers), H-2B (Temporary Non-Agricultural Workers), and E-2 (Treaty Investors). 91 Fed. Reg. at 7044–45. The Final Rule eliminates the use of Employment

17

Authorization Documents (EADs) as proof of eligibility, rescinds prior FMCSA guidance permitting DACA recipients and other EAD holders to obtain non-domiciled CDLs, imposes mandatory SAVE system verification, requires in-person renewals, limits non-domiciled CDL validity to one year, mandates document retention for two years, and requires a 30-day downgrade procedure upon change in immigration status. *Id*. at 7091–93, 7102–03.

56. As a result of the Final Rule, approximately 200,000 lawfully present non-citizen commercial drivers nationwide — including DACA recipients, recognized asylees, refugees, holders of Temporary Protected Status (TPS), and other individuals with valid federal work authorization — are rendered ineligible to renew, upgrade, or obtain non-domiciled commercial driving credentials. 91 Fed. Reg. at 7095–96. FMCSA itself concedes at 91 Fed. Reg. 7064 that it lacks "sufficient evidence, derived from well-designed, rigorous, quantitative analyses, to reliably demonstrate a measurable empirical relationship between the nation of domicile for a CDL driver and safety outcomes in the United States."

### IV. FMCSA's Corrective Action Plan for Florida

57. Upon information and belief, prior to or contemporaneous with the IFR, FMCSA imposed or threatened to impose a "corrective action plan" ("CAP") on the State of Florida related to Florida's non-domiciled CDL issuance practices.

58. Upon information and belief, the CAP requires FLHSMV to "pause" all issuance and renewal of non-domiciled CDLs and CLPs until FLHSMV demonstrates "compliance with FMCSA's regulations and guidance."

59. The CAP is itself unlawful because:

   a)   It was issued without compliance with APA rulemaking procedures required by 5 U.S.C. § 553;

18

  b) It imposes requirements that go beyond FMCSA's statutory authority under 49 U.S.C. §§ 31301 et seq.;

  c) It was issued in connection with and in furtherance of the unlawful IFR and the Final Rule;

  d) It was imposed without affording FLHSMV, affected CDL holders, or the public notice and an opportunity to be heard;

  e) It constitutes an improper legislative rule disguised as guidance or enforcement action; and

  f) It fails to specify concrete, achievable compliance criteria, instead functioning as an indefinite moratorium with no defined endpoint or measurable standards for compliance.

60. The reference in the D.C. Circuit's stay order to states "subject to a corrective action plan" does not validate the CAP itself or insulate it from legal challenge. The D.C. Circuit's order simply acknowledged the existence of CAPs without ruling on their legality. The lawfulness of the CAP is a separate and independent question that this Court has jurisdiction and authority to decide.

61. To the extent the CAP predated the IFR, it was based on compliance standards that are themselves being applied in an arbitrary, capricious, and unlawful manner. To the extent the CAP postdated or was issued contemporaneously with the IFR, it is inextricably linked to the unlawful IFR and must fall with it.

### V. Florida's Ongoing "Pause" on Non-Domiciled CDLs

62. FLHSMV issued a notice (the "FLHSMV Notice") to the public announcing a "pause" on the issuance and renewal of non-domiciled CDLs and CLPs.

63. The FLHSMV Notice cites the FMCSA IFR and the corrective action plan as the basis for the pause.

64. Despite the D.C. Circuit's stay of the IFR — which has been in effect since November 13, 2025, FLHSMV has continued to maintain the pause without interruption. As of the date of this filing, FLHSMV has refused to process, issue, or renew any non-domiciled CDLs or CLPs.

65. FLHSMV's continued pause is not required by any valid federal law, regulation, or court order. The D.C. Circuit stayed the IFR. The pre-IFR regulations — under which Florida lawfully issued non-domiciled CDLs for years — are the operative legal framework. FLHSMV's reliance on the CAP as justification for the continued pause is unavailing because the CAP is itself unlawful, as alleged herein.

66. FLHSMV did not promulgate the pause through any rulemaking process under the Florida APA. FLHSMV did not publish a proposed rule, did not provide notice to affected parties, did not conduct any hearing, and did not adopt the pause as an emergency rule with the required findings and time limitations under Fla. Stat. § 120.54(4).

67. FLHSMV did not provide Plaintiffs or any affected CDL holder with individualized notice, an opportunity to be heard, or any pre-deprivation or post-deprivation process before stripping them of their commercial driving privileges.

68. The pause operates as a blanket, categorical prohibition that applies to all non-domiciled CDL and CLP holders and applicants regardless of their individual qualifications, driving records, compliance history, or immigration status.

69. FLHSMV's continued maintenance of the pause, in the face of the D.C. Circuit's stay, constitutes independent state action for which FLHSMV bears full responsibility. FLHSMV

cannot shield its own unconstitutional conduct behind the directive of a federal agency, particularly when the federal rule underlying that directive has been stayed by a federal court. See Ex parte Young, 209 U.S. 123 (1908).

## VI. Harm to Plaintiffs

70.    Each of the nineteen Plaintiffs has suffered and continues to suffer concrete, particularized, and irreparable harm as a direct result of the Federal Defendants' and State Defendants' actions.

71.    **Loss of Livelihood**. Commercial driving is Plaintiffs' sole or primary source of income. Without valid CDLs, Plaintiffs cannot legally operate commercial motor vehicles and have lost their jobs or been unable to obtain employment in the only field for which they are trained and qualified.

72.    **Financial Devastation**. Plaintiffs have suffered lost wages, inability to pay mortgages and rent, inability to support their families, loss of health insurance, accumulation of debt, and, in some cases, threat of eviction or foreclosure. The economic harm increases with each passing day and cannot be fully remedied by monetary damages alone.

73.    **Loss of Professional Standing**. Plaintiffs' inability to maintain their CDLs has resulted in gaps in their driving records, loss of seniority, loss of employer relationships, and damage to their professional reputations. Certain Plaintiffs face the prospect of having to undergo re-testing and re-certification even if the pause is lifted, at significant additional cost and delay.

74.    **Deprivation of Property Interest**. Plaintiffs hold vested property interests in their CDLs and CLPs, which are government-issued licenses that entitle them to engage in the occupation of commercial driving. These licenses were obtained through compliance with all applicable requirements, payment of fees, and passage of rigorous testing. A CDL is not

21

a mere privilege — it is a constitutionally protected property interest once issued and maintained in compliance with applicable law. See *Bell v. Burson*, 402 U.S. 535, 539 (1971); *Barry v. Barchi*, 443 U.S. 55, 64 (1979).

75. **Deprivation of Liberty Interest**. Plaintiffs hold liberty interests in pursuing their chosen occupation and in their freedom from arbitrary governmental action. See *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972); *Greene v. McElroy*, 360 U.S. 474, 492 (1959).

76. **Stigma and Reputational Harm**. The indefinite pause, predicated on vague assertions of regulatory non-compliance and "integrity" concerns, brands Plaintiffs with a stigma of untrustworthiness and association with fraud, despite the absence of any individualized finding of wrongdoing. This stigma-plus-deprivation combination independently triggers due process protections. See *Paul v. Davis*, 424 U.S. 693, 708–09 (1976).

77. **Ongoing and Irreparable Nature of Harm**. The harm is ongoing and compounds daily. Each day the pause continues, Plaintiffs lose additional income, fall further into debt, and suffer additional deprivation of their constitutional rights. This harm is irreparable because no amount of monetary damages can fully compensate for the ongoing loss of constitutional rights, professional deterioration, and family hardship. See *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).

## **JOINDER ALLEGATIONS**

78. Plaintiffs bring this action jointly pursuant to Federal Rule of Civil Procedure 20(a)(1), which permits persons to join in one action as plaintiffs if: (a) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (b) any question of law or fact

common to all plaintiffs will arise in the action.

79. **Same Transaction or Occurrence**. All nineteen Plaintiffs' claims arise out of the same series of transactions and occurrences: (a) FMCSA's promulgation of the IFR and the Final Rule, 91 Fed. Reg. 7044; (b) FMCSA's imposition of the Corrective Action Plan on the State of Florida; and (c) FLHSMV's blanket "pause" on the issuance and renewal of all non-domiciled CDLs and CLPs. Each Plaintiff has been subjected to the identical governmental conduct — a single, uniform policy applied categorically to all non-domiciled CDL and CLP holders and applicants.

80. **Common Questions of Law and Fact**. The following questions of law and fact are common to all Plaintiffs:

   a) Whether the Final Rule violates the APA as arbitrary, capricious, an abuse of discretion, or not in accordance with law;

   b) Whether the Final Rule exceeds FMCSA's statutory authority and conflicts with federal immigration law;

   c) Whether the CAP is unlawful agency action;

   d) Whether FLHSMV's pause violates the Due Process Clauses of the Fifth and Fourteenth Amendments;

   e) Whether FLHSMV's pause violates the Equal Protection Clause;

   f) Whether FLHSMV's pause is an unadopted rule in violation of the Florida APA; and

   g) Whether Plaintiffs are entitled to injunctive and declaratory relief.

81. **Consolidation for Trial**. Pursuant to Federal Rule of Civil Procedure 42(a), Plaintiffs respectfully request that the Court consolidate all Plaintiffs' claims for hearing and trial, as all claims involve common questions of law and fact and consolidation will promote judicial

economy, avoid unnecessary costs, and prevent inconsistent adjudications.

82. **No Prejudice from Joinder**. Joinder of all nineteen Plaintiffs will not prejudice any Defendant. Each Defendant's conduct at issue is identical to all Plaintiffs: the same Final Rule, the same CAP, and the same blanket pause. No Defendant will be required to prepare individualized defenses. To the extent any individual issues arise, the Court may order separate trials on such issues pursuant to Federal Rule of Civil Procedure 42(b), without disrupting the joint adjudication of the common legal questions.

**CAUSES OF ACTION**

**COUNT I**
**Violation of the Federal APA — Arbitrary, Capricious,**
**and Not in Accordance with Law**
*(Challenge to the Final Rule)*
*(Against Federal Defendants FMCSA, USDOT, Barrs, and Duffy)*

83. Plaintiffs incorporate by reference the allegations contained in Paragraphs 32 through 35 (identifying the Federal Defendants), Paragraphs 38 through 43 (the federal CDL program and non-domiciled CDLs), Paragraphs 44 through 61 (FMCSA's regulatory actions from IFR to Final Rule), and Paragraphs 81 through 88 (harm to Plaintiffs), as though fully set forth herein.

84. The governing legal standard under 5 U.S.C. § 706(2)(A) requires that agency action not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." An agency rule is arbitrary and capricious if the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). When an agency departs from a longstanding prior practice, it must "display awareness that it is changing position" and "must supply a

reasoned explanation" for the change; where the prior practice has engendered serious reliance interests, the agency must give those interests "serious consideration" in its analysis. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016). The Final Rule fails this standard on multiple independent grounds.

### A.  **The Final Rule is Arbitrary and Capricious**

85.   First, the Final Rule, 91 Fed. Reg. 7044, is arbitrary and capricious because it fails to address the safety-rationale and reliance-interest deficiencies identified in the stay proceedings for the substantively identical Interim Final Rule. *See Rivera Lujan v. FMCSA*, No. 25-1215 (D.C. Cir. Nov. 13, 2025) (stay granted at preliminary stage; merits not decided). The stay record confirms, at minimum, that FMCSA had not articulated a satisfactory explanation for how the rule would promote safety, as required by *State Farm*, 463 U.S. at 43, and that FMCSA had not adequately considered the reliance interests of non-domiciled CDL holders, as required by *Encino Motorcars*, 579 U.S. at 221–22, and *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020). FMCSA reissued the same rule with only cosmetic changes, without curing either deficiency. The independent factual bases for these deficiencies are set forth in paragraphs 69 through 71 below.

86.   Second, FMCSA failed to examine relevant data and articulate a rational connection between those data and its categorical exclusion of approximately 200,000 drivers. *State Farm*, 463 U.S. at 43. FMCSA concedes in its own rulemaking record that it lacks sufficient evidence, derived from well-designed, rigorous, quantitative analyses, to reliably demonstrate a measurable empirical relationship between a CDL driver's nation of domicile and safety outcomes in the United States. 91 Fed. Reg. at 7064. FMCSA's own data further show that

non-domiciled CDL holders constitute approximately 5.3% of all CDL holders yet account for a disproportionately small share of fatal crashes. 91 Fed. Reg. at 7060–65. The agency's failure to reconcile these record facts with its decision to categorically exclude the entire class renders the Final Rule arbitrary and capricious under *State Farm*, 463 U.S. at 43.

87. Third, the Final Rule fails to give serious consideration to the reliance interests of approximately 200,000 affected drivers, as required by *Fox*, 556 U.S. at 515, and *Encino Motorcars*, 579 U.S. at 221–22. These drivers lawfully obtained their non-domiciled CDLs under a regulatory framework that had been in operation for decades. The following reliance facts are drawn directly from FMCSA's own rulemaking record and are each supported by the cited Final Rule pages: (a) approximately 8,000 non-domiciled CDLs expire each month, 91 Fed. Reg. at 7095–96; (b) each displaced driver faces an annual income loss of approximately $15,933, 91 Fed. Reg. at 7095–96; and (c) nationwide aggregate losses exceed $3 billion annually, 91 Fed. Reg. at 7095–96. FMCSA dismissed these agency-acknowledged losses as merely "de minimis," 91 Fed. Reg. at 7095–96, while elsewhere characterizing a non-domiciled CDL as "a high-value economic credential," 91 Fed. Reg. at 7060. That internal inconsistency constitutes the unreasoned departure from prior policy that *Fox* and *Encino Motorcars* require courts to set aside.

88. Fourth, the Final Rule is both irrationally overinclusive and underinclusive, further demonstrating its arbitrariness. It categorically excludes DACA recipients — who arrived in the United States as children, have continuously resided here since 2007, have no foreign driving histories, and constitute approximately 21% (42,000) of affected drivers — while simultaneously permitting H-2A and H-2B visa holders who may have no U.S. driving history whatsoever. FMCSA's stated justification for excluding DACA recipients — that

state clerks have had difficulty distinguishing EAD codes for DACA from other forms of deferred action — is a bare administrative convenience rationale that cannot justify the categorical elimination of 42,000 livelihoods under *State Farm*, 463 U.S. at 43. The mismatch between the Final Rule's categorical scope and its purported safety rationale demonstrates that the rule is not the product of reasoned decisionmaking. *See Dep't of Commerce v. New York*, 588 U.S. 752, 780–85 (2019).

**B.  <u>The Final Rule Exceeds Statutory Authority and Is Not in Accordance with Law</u>**

89.   The Final Rule exceeds FMCSA's statutory authority under the Commercial Motor Vehicle Safety Act, 49 U.S.C. §§ 31301 *et seq.* The CMVSA grants FMCSA authority to prescribe regulations "for testing and ensuring the fitness of an individual operating a commercial motor vehicle." 49 U.S.C. § 31305(a). The statute does not authorize FMCSA to condition CDL eligibility on visa classification or immigration status rather than on any measure of driving fitness. No provision of the CMVSA delegates to FMCSA the authority to make categorical immigration-based eligibility determinations. A decision of this economic and political significance requires clear congressional authorization, which is absent here. *West Virginia v. EPA*, 597 U.S. 697, 721–23 (2022); *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394–95 (2024). The Final Rule must be set aside pursuant to 5 U.S.C. § 706(2)(A), (C), and (D).

**COUNT II**
**Violation of the Federal APA — Failure to Consult with**
**States and Failure to Consider Reliance Interests**
*(Against Federal Defendants FMCSA, USDOT, Barrs, and Duffy)*

90.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 33 through 36 (identifying the Federal Defendants), Paragraphs 39 through 44 (the federal CDL program

and non-domiciled CDLs), Paragraphs 45 through 57 (FMCSA's regulatory actions from IFR to Final Rule), and Paragraphs 71 through 78 (harm to Plaintiffs), as though fully set forth herein.

### A. Failure to Consult with States

91. The CMVSA expressly requires the Secretary to prescribe CDL regulations "after consultation with the States." 49 U.S.C. § 31308. This consultation requirement is mandatory and contains no exception for insubstantial compliance costs or administrative impracticability. The D.C. Circuit specifically held that FMCSA's reliance on Executive Order 13132's cost-based exception was plainly insufficient to satisfy this unqualified statutory mandate, and identified the failure to consult as an independent ground supporting the stay of the IFR. *Rivera Lujan*, No. 25-1215, slip op. at 2–3.

92. The Final Rule fails to satisfy the consultation requirement. The consultation defect is established by the following factual sequence: (i) the IFR was promulgated on September 29, 2025, 90 Fed. Reg. 46,509, without any pre-promulgation consultation with the States; (ii) FMCSA sent letters to states during the IFR's 60-day comment window after the IFR had already taken effect; and (iii) FMCSA adopted the Final Rule on February 13, 2026, 91 Fed. Reg. 7044, without conducting any pre-promulgation consultation for that rule either. Post-promulgation correspondence during a comment period is not the pre-promulgation consultation that 49 U.S.C. § 31308 demands. Nineteen State Attorneys General submitted comments opposing the rule, and multiple states — including Florida — were directly and adversely impacted without any meaningful prior engagement. The Final Rule's adoption of the same approach as the IFR, without curing the consultation defect, independently warrants vacatur under 5 U.S.C. § 706(2)(D). The stay proceedings for the IFR further confirm that

this defect was identified as a ground for likely success on the merits at the preliminary stage. *Rivera Lujan*, No. 25-1215, slip op. at 2–3 (preliminary assessment only; merits not decided).

### B.  Failure to Consider Reliance Interests

93.  The Final Rule fails to adequately consider the serious reliance interests of approximately 200,000 affected drivers. When an agency departs from longstanding practice, it must give those interests serious consideration before acting. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30–33 (2020); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016). The reliance interests here are quantified in FMCSA's own rulemaking record as follows: (a) FMCSA's economic analysis shows that approximately 8,000 non-domiciled CDLs will expire each month, 91 Fed. Reg. at 7095–96; (b) each displaced driver faces an annual income loss of approximately $15,933, and nationwide aggregate losses exceed $3 billion annually, 91 Fed. Reg. at 7095–96; and (c) FMCSA characterized these losses as merely "de minimis," 91 Fed. Reg. at 7095–96, while simultaneously describing a non-domiciled CDL as "a high-value economic credential," 91 Fed. Reg. at 7060. That internal inconsistency — dismissing as de minimis the very losses its own record quantifies in the billions — constitutes the unreasoned departure from prior practice that *Fox* and *Encino Motorcars* require courts to set aside. In Florida alone, the estimated 16,000 to 20,000 affected drivers represent $255 to $319 million in annual wage differential losses. 91 Fed. Reg. at 7095–96.

### C.  Conflict with Federal Immigration Law

94.  The Final Rule conflicts with federal immigration law by categorically excluding individuals whom the Department of Homeland Security has expressly authorized to work in the United States. Congress has conferred work authorization upon asylees, 8 U.S.C. § 1158(c)(1)(B);

refugees, 8 U.S.C. § 1157(c)(2); and others holding valid Employment Authorization Documents issued pursuant to DHS's regulatory authority under 8 U.S.C. § 1324a. The Final Rule rejects those EADs as proof of CDL eligibility while simultaneously permitting certain visa categories that do not independently demonstrate verifiable U.S. driving history. This categorical exclusion of DHS-authorized workers — including asylees, refugees, TPS holders, and DACA recipients — stands as an obstacle to the execution of Congress's comprehensive work-authorization framework and is therefore preempted under the conflict preemption doctrine. *Arizona v. United States*, 567 U.S. 387, 399–406 (2012). This conflict with the INA independently renders the Final Rule "not in accordance with law" under 5 U.S.C. § 706(2)(A).

95. The Final Rule must be set aside as arbitrary, capricious, an abuse of discretion, in excess of statutory authority, and otherwise not in accordance with law, pursuant to 5 U.S.C. § 706(2)(A), (C), and (D).

**COUNT III**
**Violation of the Federal APA — The Corrective Action Plan**
**Constitutes Unlawful Agency Action**
*(Against Federal Defendants FMCSA, USDOT, Barrs, and Duffy)*

96. Plaintiffs incorporate by reference the allegations contained in Paragraphs 33 through 36 (identifying the Federal Defendants), Paragraphs 39 through 44 (the federal CDL program), Paragraphs 45 through 57 (FMCSA's regulatory actions), Paragraphs 52 through 57 (the D.C. Circuit stay), and Paragraphs 58 through 62 (the Corrective Action Plan), as though fully set forth herein.

97. FMCSA's imposition of the CAP on Florida constitutes "final agency action" reviewable under the APA. Under *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), agency action is final

when it satisfies two prongs: (1) it marks the consummation of the agency's decisionmaking process, and (2) it determines rights or obligations or produces legal consequences. Both prongs are satisfied here. As to prong one: the CAP reflects FMCSA's definitive position on Florida's non-domiciled CDL program; FMCSA has taken no further step suggesting reconsideration of that position. As to prong two: (a) FLHSMV's Information Notice dated November 24, 2025 (INFO 25-019) expressly states that FLHSMV paused CDL issuance in alignment with FMCSA's guidance and that the pause will remain in effect until FLHSMV satisfies FMCSA's compliance conditions, see Paragraphs 62–64, 73–74; and (b) FLHSMV states that these updates are essential for Florida to maintain its certification to issue federally compliant CDLs, see Paragraph 74 — making explicit that FMCSA has conditioned Florida's federal CDL certification on compliance with the CAP's terms. The threatened loss of federal certification would strip Florida of authority to issue any federally compliant CDLs, a legal consequence of the highest order. The CAP thus determines Florida's rights and obligations and produces binding legal consequences sufficient to establish finality under *Bennett*.

98. The CAP is arbitrary, capricious, and an abuse of discretion because: (a) it imposes a categorical, open-ended prohibition on an entire class of CDL issuances without any individualized assessment; (b) it is based on, or inextricably intertwined with, the unlawful IFR and the Final Rule, such that it cannot stand independently of those invalid regulatory actions; (c) it fails to specify concrete, achievable compliance criteria, imposing conditions whose satisfaction is subject to FMCSA's unreviewable discretion; and (d) as demonstrated by FLHSMV's Information Notice, the CAP has imposed an indefinite operational pause with no defined timeline for resolution — conditions that, under *Motor Vehicle Mfrs. Ass'n*

*v. State Farm*, 463 U.S. 29, 43 (1983), reflect the absence of reasoned decision-making.

99.   The CAP is also a substantive rule subject to notice-and-comment requirements under 5 U.S.C. § 553 that was issued without complying with those requirements. The CAP announces generally applicable, binding criteria and imposes an across-the-board suspension applicable to Florida as a regulated party and to all affected applicants; it is not mere guidance. The Information Notice's "remain in effect until" language confirms that the CAP functions as a binding directive with mandatory compliance conditions, not a discretionary agency communication. As an alternative and independent ground: regardless of whether the CAP predated, was contemporaneous with, or postdated the IFR, it is independently unlawful. If it predated the IFR, it was based on compliance standards applied in an arbitrary and unlawful manner. If it postdated or was issued contemporaneously with the IFR, it is inextricably linked to the unlawful IFR and must fall with it. In either case, FMCSA imposed binding obligations on Florida — suspension of the entire non-domiciled CDL program — without affording FLHSMV, affected CDL holders, or the public notice or an opportunity to be heard.

100.  The CAP should be set aside as unlawful agency action under 5 U.S.C. § 706(2)(A), (C), and (D).

## COUNT IV
### Violation of the Due Process Clause of the Fifth Amendment —
### Procedural Due Process
*(Against Federal Defendants FMCSA, USDOT, Barrs, and Duffy)*

101.  Plaintiffs incorporate by reference the allegations contained in Paragraphs 13 through 32 (identifying Plaintiffs), Paragraphs 33 through 36 (identifying the Federal Defendants), Paragraphs 39 through 44 (the federal CDL program), Paragraphs 45 through 57 (FMCSA's

regulatory actions), Paragraphs 58 through 62 (the Corrective Action Plan), and Paragraphs 71 through 78 (harm to Plaintiffs, including deprivation of property and liberty interests), as though fully set forth herein.

102. The Due Process Clause of the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

103. Plaintiffs hold constitutionally protected property interests in their CDLs and CLPs. These licenses were issued by the State of Florida upon satisfaction of objective statutory criteria, including identity verification, lawful-presence verification, knowledge and skills testing, medical certification, and payment of fees. A government-issued license that is essential to the pursuit of a livelihood constitutes a protected property interest under the Due Process Clause. *See Barry v. Barchi*, 443 U.S. 55, 64 (1979); *Bell v. Burson*, 402 U.S. 535, 539 (1971); *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) (property interest arises where state law creates a legitimate claim of entitlement). Florida law creates such an entitlement: FLHSMV "shall issue" a CDL to any applicant who satisfies the enumerated statutory and regulatory requirements. Fla. Stat. §§ 322.53–322.57; 49 C.F.R. § 383.71(f).

104. These property interests are independently protected within the Eleventh Circuit. Due process entitles an individual to notice and some form of hearing before state action may finally deprive him or her of a property interest. *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994). Once a property interest exists, the right to due process attaches and cannot be extinguished by the very entity seeking to effect the deprivation. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures.").

33

105. Plaintiffs also hold constitutionally protected liberty interests in pursuing their chosen occupation. *See Greene v. McElroy*, 360 U.S. 474, 492 (1959).

106. The Final Rule, 91 Fed. Reg. 7044, and the CAP operate to deprive Plaintiffs of these vested interests through specific, identifiable mechanisms. The Final Rule categorically renders Plaintiffs ineligible to renew or obtain non-domiciled CDLs by restricting eligibility to holders of three narrow visa categories (H-2A, H-2B, and E-2), thereby excluding all EAD holders, DACA recipients, asylees, refugees, and TPS holders regardless of their individual qualifications, driving records, or compliance history. 91 Fed. Reg. at 7044–45. The CAP independently compels FLHSMV to suspend all processing of non-domiciled CDLs and CLPs, resulting in the constructive revocation of existing credentials as they reach their expiration dates and the categorical denial of all pending renewal and issuance applications. Approximately 8,000 non-domiciled CDLs expire each month nationwide, and each expiration results in the automatic loss of the holder's ability to operate a commercial motor vehicle and earn a livelihood.

107. The deprivation traceable to the Federal Defendants is concrete and particularized. Upon information and belief, Lead Plaintiff R.K.G. holds or has applied for the renewal of a non-domiciled CDL that has expired or is expiring during the pendency of the pause; he has been unable to renew that credential through any federal or state channel; and he has lost employment as a direct result. Multiple additional Plaintiffs have similarly experienced the expiration of their CDLs and CLPs, have attempted to renew at FLHSMV offices and been turned away, and have suffered job loss, wage loss, and financial hardship as a direct and proximate result of the Final Rule and CAP. No individualized assessment of any Plaintiff's qualifications, driving record, or compliance history preceded or accompanied the

deprivation.

108. The Federal Defendants have provided no administrative mechanism by which Plaintiffs may challenge their categorical ineligibility under the Final Rule or the CAP. The Final Rule contains no waiver provision, no exemption process, and no individualized hearing procedure. FMCSA has established no administrative appeal for individuals rendered ineligible by the Rule's categorical restrictions. The absence of any available federal remedial process distinguishes this case from circumstances in which post-deprivation remedies may satisfy due process.

109. Under the balancing test established by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Court must consider: (i) the private interest affected by the official action; (ii) the risk of erroneous deprivation through the procedures used, and the probable value of additional or substitute procedural safeguards; and (iii) the Government's interest, including the function involved and the fiscal and administrative burdens of additional procedural requirements.

110. Application of the *Mathews* factors compels a finding that Plaintiffs were denied due process:

(a) *The private interest at stake.* The ability to pursue one's livelihood and support one's family is a private interest of the highest order. *See Goldberg v. Kelly*, 397 U.S. 254, 264 (1970). Commercial driving is Plaintiffs' sole or primary source of income; without valid CDLs, they cannot legally operate commercial motor vehicles and face the total destruction of their earning capacity.

(b) *The risk of erroneous deprivation.* The risk of erroneous deprivation is extreme. The Federal Defendants provided no process whatsoever—no individualized notice, no opportunity to be heard, and no pre-deprivation or post-deprivation hearing. A blanket categorical prohibition inherently fails to distinguish between individuals

who may present legitimate regulatory concerns and those who are fully compliant, have clean driving records, hold valid medical certifications, and have operated commercial vehicles without incident for years. Any individualized review—such as an audit of driving records, verification of medical certification, or assessment of compliance history—would demonstrate that the overwhelming majority of affected Plaintiffs pose no safety risk whatsoever. The value of additional procedural safeguards is therefore high. *See Mackey v. Montrym*, 443 U.S. 1, 13 (1979) (evaluating the risk of erroneous deprivation in the context of driver's license suspension and governmental safety interests).

(c) *The Government's interest.* The Government's interest does not justify the complete absence of process. FMCSA itself concedes at 91 Fed. Reg. 7064 that it lacks "sufficient evidence, derived from well-designed, rigorous, quantitative analyses, to reliably demonstrate a measurable empirical relationship between the nation of domicile for a CDL driver and safety outcomes in the United States." Even assuming a legitimate interest in regulatory compliance, the Government could have achieved its objectives through less burdensome means, such as individualized audits, enhanced documentation requirements, targeted enforcement actions against specific bad actors, or transition periods with interim renewal procedures. The fiscal and administrative burden of providing at least some form of individualized process—such as paper review of existing FMCSA and FLHSMV records—would be minimal given that the necessary records already exist in federal and state databases.

111. The Federal Defendants' failure to provide any process before depriving Plaintiffs of their

vested property and liberty interests violates the Due Process Clause of the Fifth Amendment.

## COUNT V
### Violation of the Equal Protection Component of the Fifth Amendment
*(Against Federal Defendants FMCSA, USDOT, Barrs, and Duffy)*

112. Plaintiffs incorporate by reference the allegations contained in Paragraphs 13 through 32 (identifying Plaintiffs), Paragraphs 33 through 36 (identifying the Federal Defendants), Paragraphs 45 through 57 (FMCSA's regulatory actions, including the pretextual and discriminatory nature of the IFR and Final Rule as alleged in Paragraph 51), Paragraphs 58 through 62 (the Corrective Action Plan), and Paragraphs 71 through 78 (harm to Plaintiffs), as though fully set forth herein.

113. The Fifth Amendment's Due Process Clause includes an equal protection component that prohibits the federal government from engaging in invidious discrimination. *See Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954); *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 224 (1995); *Sessions v. Morales-Santana*, 582 U.S. 47, 52 (2017).

114. The Final Rule and the CAP draw a classification between individuals "domiciled in a foreign jurisdiction" and all other CDL holders and applicants. This classification operates along two axes: (i) it restricts eligibility based on immigration-status categories, excluding individuals who hold Employment Authorization Documents—including DACA recipients, asylees, refugees, and TPS holders—while permitting only holders of three narrow visa types (H-2A, H-2B, and E-2); and (ii) it restricts eligibility based on foreign domicile, a characteristic that overwhelmingly correlates with national origin and alienage. The combined effect is a classification that categorically excludes approximately 200,000 lawfully present, federally work-authorized individuals from a previously available occupational license.

115. Even under the deferential rational basis standard applicable to federal classifications related to immigration, *see Mathews v. Diaz*, 426 U.S. 67, 83–84 (1976), the Final Rule and CAP fail because they lack any rational relationship to a legitimate governmental interest. A regulatory classification must, at minimum, bear a rational relationship to an independent and legitimate governmental purpose; a bare desire to harm a politically unpopular group is not a legitimate governmental interest. *See Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973). Where a classification's breadth is so discontinuous with the reasons offered for it that it appears inexplicable by anything but animus toward the class it affects, it fails rational basis review. *See Romer v. Evans*, 517 U.S. 620, 632 (1996).

116. The deference ordinarily afforded federal classifications involving alienage under *Mathews v. Diaz* is inapposite here because FMCSA is not Congress and is not the Department of Homeland Security. FMCSA is a safety agency within the Department of Transportation. The Commercial Motor Vehicle Safety Act, 49 U.S.C. §§ 31301 *et seq.*, delegates to FMCSA authority over the testing and fitness of commercial drivers—not authority over immigration policy or the determination of which categories of federally work-authorized individuals may access occupational licenses. FMCSA's use of immigration-status categories as the operative criterion for CDL eligibility exceeds this delegated authority and ventures into immigration regulation without congressional delegation, implicating the major questions doctrine. *See West Virginia v. EPA*, 597 U.S. 697 (2022). The Court should therefore apply more searching rational basis review, or alternatively, heightened scrutiny to the extent the classification functions as an alienage- or national-origin-based restriction enacted by an agency without authority over those domains.

117. The Final Rule fails rational basis review because it is both irrationally overinclusive and

underinclusive. The Rule excludes DACA recipients—who arrived in the United States as children, have continuously resided here since 2007, have no foreign driving histories, and constitute approximately 21% (42,000) of affected drivers—while permitting H-2A and H-2B visa holders who may have no U.S. driving history whatsoever. The purported justification for excluding DACA recipients—that state clerks have difficulty distinguishing between EAD codes—amounts to an administrative convenience rationale that cannot justify the categorical destruction of 42,000 livelihoods. *See Dep't of Commerce v. New York*, 588 U.S. 752, 780–85 (2019). The mismatch between the Rule's restrictions and its purported justification suggests that the stated rationale is pretextual.\

118. Multiple objective indicia support an inference that the Final Rule was motivated by animus or reflects arbitrary governmental action unmoored from its stated safety purpose, evaluated under the framework of *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977):

    (a) *Disparate impact.* The overwhelming majority of affected individuals are immigrants from Latin American, Caribbean, and other non-European nations who have lawfully established residence in the United States. The Final Rule eliminates CDL access for asylees, refugees, TPS holders, and DACA recipients while preserving it for a narrow subset of visa holders—a distinction that correlates strongly with race and national origin.

    (b) *Procedural departures.* FMCSA promulgated the IFR without notice-and-comment rulemaking, invoking "good cause" in a manner the D.C. Circuit found unlikely to survive review. *Rivera Lujan v. FMCSA,* No. 25-1215, 2025 WL 3182504 (D.C. Cir. Nov. 13, 2025). FMCSA failed to consult with states as required by 49 U.S.C.

§ 31308 and failed to consider the reliance interests of 200,000 affected drivers despite being directed to do so by the D.C. Circuit. These departures from normal procedural requirements are probative of improper motive.

(c) *Acknowledged absence of evidentiary basis.* FMCSA concedes at 91 Fed. Reg. 7064 that it lacks sufficient evidence to demonstrate a relationship between nation of domicile and safety outcomes. The 17 fatal crashes FMCSA cites represent 0.32% of total fatal truck crashes and 0.01% of all truck crashes. Non-domiciled CDL holders, who constitute approximately 5.3% of all CDL holders, are statistically underrepresented in fatal crashes.

(d) *Sequence and timing.* The IFR was issued during a period of heightened executive action targeting immigrant populations and was followed by the Final Rule, which reaffirmed the same categorical exclusion with only cosmetic changes despite the D.C. Circuit's identification of specific legal deficiencies.

119. The Federal Defendants' actions violate the equal protection component of the Fifth Amendment.

### COUNT VI
### Violation of 42 U.S.C. § 1983 — Deprivation of Procedural Due Process
### Under the Fourteenth Amendment
*(Against State Defendant Kerner in His Official Capacity)*

120. Plaintiffs incorporate by reference the allegations contained in Paragraphs 13 through 31 (identifying Plaintiffs), Paragraphs 36 through 37 (identifying the State Defendants), Paragraphs 38 through 43 (the federal CDL program), Paragraphs 73 through 80 (FLHSMV's ongoing pause), and Paragraphs 81 through 88 (harm to Plaintiffs, including

deprivation of property and liberty interests), as though fully set forth herein.

121. Section 1983 provides a cause of action against any "person" who, acting under color of state law, deprives another of rights secured by the Constitution. 42 U.S.C. § 1983. Executive Director Kerner is sued in his official capacity for prospective injunctive and declaratory relief. *See Ex parte Young*, 209 U.S. 123 (1908).

122. Executive Director Kerner, acting under color of state law in his capacity as chief executive officer of FLHSMV, has deprived Plaintiffs of their constitutionally protected property and liberty interests in their CDLs and CLPs without due process of law, in violation of the Fourteenth Amendment.

123. Plaintiffs hold protected property interests in their CDLs and CLPs. Florida law creates a legitimate claim of entitlement to a CDL upon satisfaction of statutory and regulatory requirements. Fla. Stat. §§ 322.53–322.57 establish objective criteria for CDL issuance, including testing, medical certification, and identity verification, and direct FLHSMV to issue CDLs to applicants who meet those requirements. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–41 (1985) (property interest in continued employment arises from state law; due process required before deprivation); *Bell v. Burson*, 402 U.S. 535, 539 (1971) (driver's license is a protected property interest); *Barry v. Barchi*, 443 U.S. 55, 64 (1979) (same, professional license).

124. Within the Eleventh Circuit, a procedural due process claim under § 1983 requires: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994); *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). All three elements are satisfied here.

125. Plaintiffs also hold protected liberty interests in pursuing their chosen occupation. *See Greene v. McElroy*, 360 U.S. 474, 492 (1959).

126. FLHSMV's blanket pause constitutes an established state procedure—a formal, deliberate policy of general applicability adopted and maintained by FLHSMV as an agency-wide directive—rather than a random, unauthorized act by a rogue official. Because the deprivation results from an established state procedure, pre-deprivation process is required and the availability of post-deprivation state-court remedies does not cure the constitutional deficiency. *See Zinermon v. Burch*, 494 U.S. 113, 136 (1990) (where deprivation is foreseeable and results from an established state procedure, the state can and should provide pre-deprivation process; *Parratt* doctrine inapplicable); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982) (state cannot destroy a property interest through procedures that fail to provide adequate safeguards).

127. Applying the *Mathews v. Eldridge*, 424 U.S. 319 (1976), balancing test to FLHSMV's conduct:

(a) *The private interests at stake* are of the highest magnitude. Commercial driving is Plaintiffs' sole or primary source of income, and without valid CDLs they face total loss of livelihood, with cascading effects on their ability to provide for their families, maintain housing, and meet financial obligations.

(b) *The risk of erroneous deprivation is absolute.* FLHSMV applied a categorical ban without any individualized assessment of any Plaintiff's qualifications, driving record, compliance history, or immigration status. Upon information and belief, multiple Plaintiffs have visited FLHSMV offices seeking to renew their CDLs and have been denied without explanation, without written notice of rights, and without any opportunity to demonstrate that they

satisfy all applicable requirements. The categorical nature of the pause means that every fully qualified, fully compliant non-domiciled CDL holder is erroneously treated as ineligible.

(c) *The state's purported interest* does not justify the absence of process. FLHSMV's sole stated justification—compliance with a federal corrective action plan—is undermined by the following: the IFR underlying the CAP was stayed by the D.C. Circuit on November 13, 2025; the D.C. Circuit expressly stated that states are not prohibited from issuing non-domiciled CDLs under the pre-IFR framework; the CAP itself is of questionable legality; and the Final Rule contains FMCSA's own concession that it lacks sufficient evidence linking domicile to safety outcomes.

128. FLHSMV's blanket pause deprived Plaintiffs without providing: (a) individualized notice of the grounds for the deprivation; (b) an opportunity to be heard before or after the deprivation; (c) an opportunity to demonstrate individual qualifications; (d) any administrative appeal or exemption mechanism; or (e) any timeline for resolution or criteria by which the pause would be lifted. The pause has been in effect for approximately seventeen months, is indefinite in duration, and FLHSMV has articulated no standards or conditions for its termination.

129. FLHSMV's failure to provide any pre-deprivation process in connection with an established state procedure violates the Due Process Clause of the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.

## COUNT VII
### Violation of 42 U.S.C. § 1983 — Deprivation of Equal Protection
### Under the Fourteenth Amendment
*(Against State Defendant Kerner in His Official Capacity)*

130. Plaintiffs incorporate by reference the allegations contained in Paragraphs 13 through 32 (identifying Plaintiffs), Paragraphs 37 through 38 (identifying the State Defendants), Paragraphs 63 through 70 (FLHSMV's ongoing pause, including its categorical and discriminatory application), and Paragraphs 71 through 78 (harm to Plaintiffs), as though fully set forth herein.

131. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This guarantee applies to all persons within a state's jurisdiction regardless of immigration status. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982).

132. FLHSMV's pause classifies individuals based on their status as "domiciled in a foreign jurisdiction." This classification is functionally an alienage classification: it applies exclusively to non-citizens who are domiciled outside the United States, and it does not affect any U.S. citizen. State classifications based on alienage are subject to strict scrutiny. *See Graham v. Richardson*, 403 U.S. 365, 371–72 (1971). FLHSMV cannot satisfy this standard because the pause serves no compelling state interest—it is predicated on compliance with a federal directive of questionable legality, not on any independent state determination regarding safety, fitness, or regulatory need.

133. Even if the Court determines that the non-domiciled classification is not an alienage classification triggering strict scrutiny, FLHSMV's differential treatment fails rational basis review. Where a classification imposes a broad and undifferentiated disability on a single group and the breadth of the classification is so discontinuous with the reasons offered for it that it appears inexplicable by anything but animus, the classification lacks a rational relationship to legitimate state interests. *See Romer v. Evans*, 517 U.S. 620, 632 (1996); *City*

*of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446–47 (1985). A bare desire to harm a politically unpopular group cannot constitute a legitimate governmental interest. *See Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973).

134. Plaintiffs are similarly situated in all relevant respects to other CDL holders and applicants in Florida. Non-domiciled CDL holders have satisfied the identical testing requirements, passed the identical medical certifications, submitted the identical identity and lawful-presence verifications, and paid the identical fees as CDL holders domiciled in the United States. FLHSMV continues to process, issue, and renew CDL applications for all categories of domiciled applicants—including U.S. citizens, lawful permanent residents, and other non-citizens domiciled within the United States—while categorically refusing to process any non-domiciled CDL or CLP application. The sole distinguishing characteristic between these groups is the applicant's nation of domicile.

135. This differential treatment is not rationally related to any legitimate state interest. FLHSMV has identified no safety concern, compliance deficiency, or regulatory need specific to non-domiciled CDL holders that would justify treating them differently from identically qualified domiciled CDL holders. FLHSMV's prior practice of issuing non-domiciled CDLs for years without incident demonstrates that the classification is not safety-related. FLHSMV's reliance on the CAP as its sole justification is undermined by the D.C. Circuit's stay of the IFR and the CAP's own questionable legality.

136. Multiple indicia of arbitrariness and irrationality support an inference that the pause reflects discriminatory animus or, at minimum, irrational governmental action. Under the framework of *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977), and *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979), the following factors

are probative:

(a) *Disparate impact.* The pause falls exclusively on immigrants, primarily individuals from Latin American, Caribbean, and other non-European nations. No U.S. citizen is affected by the pause.

(b) *Departures from normal procedures.* FLHSMV adopted and maintained the pause without promulgating a rule under the Florida APA, without issuing an emergency rule with required findings, and without providing any form of individualized notice or hearing—departures from established procedural norms that are probative of improper motive.

(c) *Continuation despite changed circumstances.* FLHSMV has continued the pause for approximately seventeen months despite the D.C. Circuit's stay of the IFR, which restored the legal status quo under which non-domiciled CDLs were lawfully issued. The persistence of the pause in the absence of any operative federal legal prohibition supports an inference that the classification is maintained for reasons other than its stated justification.

137. FLHSMV's discriminatory conduct violates the Equal Protection Clause of the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.

**COUNT VIII**
**Violation of the Florida APA — Unadopted Rule**
*(Against State Defendants FLHSMV and Kerner)*

138. Plaintiffs incorporate by reference the allegations contained in Paragraphs 37 through 38 (identifying the State Defendants), Paragraphs 58 through 62 (the Corrective Action Plan),

and Paragraphs 63 through 70 (FLHSMV's ongoing pause, including the absence of rulemaking procedures as alleged in Paragraph 67), as though fully set forth herein.

139. The Florida APA defines a "rule" as "each agency statement of general applicability that implements, interprets, or prescribes law or policy." Fla. Stat. § 120.52(16).

140. FLHSMV's "pause" constitutes a "rule" within the meaning of Fla. Stat. § 120.52(16) because each element of that definition is satisfied: (1) *Agency statement*: On November 24, 2025, FLHSMV issued Information Notice INFO 25-019, Division of Motorist Services, signed by Executive Director Dave Kerner, publicly announcing that FLHSMV had "temporarily paused the issuance of non-domiciled (non-immigrant) CLPs and CDLs" in alignment with FMCSA guidance, and that the pause would "remain in effect" until FLHSMV satisfied FMCSA's compliance conditions. See Paragraph 63. (2) *General applicability*: The Notice was directed to all FLHSMV personnel and applied categorically to every non-domiciled CDL and CLP holder and applicant in the State of Florida, without individual assessment or exception. See Paragraphs 63–64, 51. (3) *Prescribes policy*: The pause prescribes a categorical policy — namely, the refusal to process, issue, or renew an entire class of commercial driving credentials — until FMCSA-defined compliance conditions are satisfied. See Paragraphs 64–66. While the Notice initially identified a credential redesign as the operative condition for lifting the pause, the primary and continuing basis for the pause is alignment with FMCSA's guidance and compliance with the CAP. See Paragraph 58–62, 64. (4) *Used to determine party rights*: FLHSMV is applying the pause in licensing adjudications and at customer service centers statewide to deny applications and refuse renewals for non-domiciled CDLs and CLPs. See Paragraphs 65, 68, 71–78. (5) *Absence of rulemaking*: FLHSMV adopted the pause without complying with any

rulemaking procedures under Fla. Stat. § 120.54. See Paragraph 67. The pause is therefore a rule within the meaning of the Florida APA and was required to be adopted through the rulemaking process.

141. Under the Florida APA, an agency may not adopt a rule without complying with the rulemaking procedures set forth in Fla. Stat. § 120.54. Those procedures require, at minimum, published notice of rulemaking, an opportunity for public comment, and a hearing upon timely request.

142. FLHSMV adopted and implemented the pause without complying with any rulemaking procedures. FLHSMV did not publish a proposed rule, did not provide notice to affected parties or the public, did not conduct any public hearing, and has not adopted the pause as an emergency rule with the required factual findings and time limitations under Fla. Stat. § 120.54(4). The complete absence of any rulemaking process, including the failure to invoke the emergency-rule procedure, forecloses any argument that the pause was lawfully adopted through an alternative procedural pathway.

143. Under Fla. Stat. § 120.56(4), it is a violation of the Florida APA for an agency to base any action that determines the rights of a party on an unadopted rule. FLHSMV is applying the pause as the basis for the following determinations of party rights: (a) denying applications for initial non-domiciled CDLs and CLPs, see Paragraphs 65, 69; (b) refusing to process renewals of existing non-domiciled CDLs and CLPs, see Paragraphs 65, 69, 53–56; and (c) declining to accept or adjudicate any non-domiciled CDL or CLP application at FLHSMV customer service centers statewide, see Paragraphs 65, 68. Each such action constitutes a determination of the rights of an affected party based solely on the unadopted rule. *See also Dep't of Highway Safety & Motor Vehicles v. Schluter*, 705 So. 2d 81, 84 (Fla. 1st DCA

1997) (agency may not enforce unadopted rule against private parties).

144. FLHSMV's adoption and enforcement of the pause as an unadopted rule violates the Florida APA, and the pause must be declared invalid and enjoined pursuant to Fla. Stat. § 120.56(4).

**COUNT IX**
**Violation of the Florida APA — Invalid Exercise of**
**Delegated Legislative Authority**
*(Against State Defendants FLHSMV and Kerner)*

145. Plaintiffs incorporate by reference the allegations contained in Paragraphs 37 through 38 (identifying the State Defendants) and Paragraphs 63 through 70 (FLHSMV's ongoing pause), as though fully set forth herein.

146. Under the Florida APA, Fla. Stat. § 120.52(8), a proposed or existing rule is an "invalid exercise of delegated legislative authority" if any one or more of the following apply:

(a) The rule exceeds the agency's grant of rulemaking authority (§ 120.52(8)(b));

(b) The rule enlarges, modifies, or contravenes the specific provisions of the law implemented (§ 120.52(8)(c));

(c) The rule is vague, fails to establish adequate standards, or vests unbridled discretion in the agency (§ 120.52(8)(d));

(d) The rule is arbitrary or capricious (§ 120.52(8)(e)); or

(e) The rule is not supported by competent substantial evidence (§ 120.52(8)(f)).

147. FLHSMV's pause satisfies multiple, independent criteria for an invalid exercise of delegated legislative authority:

(a) <u>Exceeds Rulemaking Authority</u>: FLHSMV has no statutory authority to categorically suspend an entire class of driver's license issuances without individual adjudication. Chapter 322, Florida Statutes, vests FLHSMV with authority to issue commercial driver's licenses upon satisfaction of prescribed eligibility criteria. *See* Fla. Stat. §§ 322.12, 322.54. Nothing in Chapter 322 authorizes FLHSMV to impose a categorical, open-ended moratorium on an entire credential class without any individualized determination of ineligibility. See Paragraphs 39–44, 63–70.

(b) <u>Contravenes the Law Implemented</u>: The pause contravenes Fla. Stat. §§ 322.12 and 322.54, which establish the eligibility requirements and mandatory issuance duties for CDLs upon a qualified applicant's satisfaction of those criteria. By categorically refusing to process any non-domiciled CDL application — regardless of whether the applicant has met every statutory requirement — the pause enlarges, modifies, and contravenes these specific provisions of the law FLHSMV is charged with implementing. Prior to the IFR, Florida lawfully issued non-domiciled CDLs to qualified applicants under this same statutory framework, confirming that the framework itself contemplates issuance and that the pause operates in direct derogation of it. See Paragraphs 42–44, 63–66, 69.

(c) <u>Vague and Standardless</u>: The pause provides no standards, criteria, or timeline for its conclusion. As confirmed by FLHSMV's own Information Notice (INFO 25-019), the pause will remain in effect indefinitely until FLHSMV satisfies conditions set entirely at FMCSA's discretion. See Paragraphs 63–64. This vests unbridled, unreviewable discretion in a federal agency to determine when, if ever, Florida may resume exercising its own state licensing authority, in violation of § 120.52(8)(d).

50

(d) <u>Arbitrary and Capricious</u>: The pause is arbitrary and capricious because FLHSMV is continuing a blanket suspension of non-domiciled CDL issuances even after the D.C. Circuit issued a stay of the IFR restoring the pre-IFR legal status quo. See Paragraphs 52–54. FLHSMV has offered no Florida-specific safety finding, administrative determination, or factual record to justify maintaining the pause after the federal legal basis for it was stayed. See Paragraphs 65–67. The absence of any rational basis for continuing the pause under these circumstances is, independently of federal law, an arbitrary and capricious exercise of FLHSMV's delegated authority under § 120.52(8)(e).

(e) <u>Not Supported by Competent Substantial Evidence</u>: The pause is not supported by competent substantial evidence. FLHSMV has produced no rulemaking record, no factual findings, and no evidentiary basis for the categorical suspension of non-domiciled CDL issuances. See Paragraphs 65–67. The complete absence of any rulemaking record is itself dispositive: there is no record from which any reviewing tribunal could assess whether FLHSMV's action is supported by evidence, because FLHSMV compiled no such record before acting.

148. The pause satisfies each of the foregoing criteria independently, and any one is sufficient to render it invalid under the Florida APA. The pause must therefore be declared unlawful and enjoined pursuant to Fla. Stat. § 120.52(8).

**COUNT X**
**Violation of Article I, Sections 2 and 9 of the Florida Constitution —**
**Due Process and Equal Protection**
*(Against State Defendants FLHSMV and Kerner)*

149. Plaintiffs incorporate by reference the allegations contained in Paragraphs 13 through 32

(identifying Plaintiffs), Paragraphs 37 through 38 (identifying the State Defendants), Paragraphs 63 through 70 (FLHSMV's ongoing pause), and Paragraphs 71 through 78 (harm to Plaintiffs, including deprivation of property and liberty interests), as though fully set forth herein.

150. Article I, Section 2 of the Florida Constitution provides: "All natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property."

151. Article I, Section 9 of the Florida Constitution provides: "No person shall be deprived of life, liberty or property without due process of law."

152. The due process guarantee of Article I, Section 9 provides protections that are coextensive with those afforded under the Due Process Clause of the Fourteenth Amendment. *See Dep't of Law Enforcement v. Real Property*, 588 So. 2d 957, 960 (Fla. 1991). Where a state agency deprives an individual of a protected property or liberty interest, it must provide meaningful notice and a meaningful opportunity to be heard. *Id.* The Florida Supreme Court has recognized that the right to pursue a lawful occupation and to be rewarded for industry is among the inalienable rights protected by Article I, Section 2. *See State v. J.P.*, 907 So. 2d 1101, 1109–10 (Fla. 2004).

153. Plaintiffs hold constitutionally protected property interests in their CDLs and CLPs under Florida law. Florida Statutes §§ 322.53 through 322.57 establish objective criteria for CDL issuance and direct FLHSMV to issue licenses to applicants who satisfy those criteria. Plaintiffs obtained their CDLs by satisfying each statutory and regulatory requirement, including testing, medical certification, identity verification, and payment of fees. These

licenses constitute authorization to pursue a lawful occupation and to be rewarded for industry within the meaning of Article I, Section 2.

154. FLHSMV's blanket pause deprives Plaintiffs of these constitutionally protected property and liberty interests—including their right to be rewarded for industry and to pursue happiness through their chosen occupation—without due process of law, in violation of Article I, Sections 2 and 9 of the Florida Constitution. FLHSMV provided no individualized notice, no opportunity to be heard, no administrative appeal, and no criteria or timeline by which Plaintiffs could seek reinstatement of their credentials. These process deficits are independently evidenced by FLHSMV's failure to follow any rulemaking procedure under the Florida APA—including the emergency rulemaking provisions of Fla. Stat. § 120.54(4)—before implementing the pause, as alleged in Counts VIII and IX, which failure further demonstrates the absence of constitutionally adequate procedural protections. *See Dep't of Highway Safety & Motor Vehicles v. Schluter*, 705 So. 2d 81, 84 (Fla. 1st DCA 1997).

155. Florida's equal protection guarantee under Article I, Section 2 is analyzed under a framework consistent with the federal Equal Protection Clause. *See N. Fla. Women's Health & Counseling Servs., Inc. v. State*, 866 So. 2d 612, 625 (Fla. 2003). Under this framework, a classification that treats similarly situated individuals differently must bear at least a rational relationship to a legitimate state interest.

156. FLHSMV's pause violates Article I, Section 2 by treating non-domiciled CDL holders unequally compared to all other categories of CDL holders and applicants. FLHSMV continues to process CDLs for domiciled applicants—including U.S. citizens, lawful permanent residents, and other non-citizens domiciled within the United States—while

categorically refusing to process applications from non-domiciled CDL holders who have satisfied the identical requirements. This differential treatment is without legitimate justification. FLHSMV has identified no independent state interest served by the continued pause, and its sole stated justification—compliance with the CAP—is unavailing because the underlying IFR has been stayed by the D.C. Circuit, the CAP itself is of questionable legality, and FMCSA's own record concedes the absence of a safety nexus between domicile status and driver safety outcomes. *See Sasso v. Ram Prop. Mgmt.*, 452 So. 2d 932, 934 (Fla. 1984) (equal protection under Florida Constitution analyzed under rational basis framework).

**COUNT XI**
**Declaratory and Injunctive Relief**
*(Against All Defendants)*

157. Plaintiffs incorporate by reference the allegations contained in Paragraphs 13 through 38 (identifying the parties), Paragraphs 45 through 57 (FMCSA's regulatory actions from IFR to Final Rule), Paragraphs 58 through 62 (the Corrective Action Plan), Paragraphs 63 through 70 (FLHSMV's ongoing pause), and Paragraphs 71 through 78 (harm to Plaintiffs), as though fully set forth herein.

158. An actual, justiciable controversy exists between Plaintiffs and Defendants regarding: (a) the legality of the Final Rule, 91 Fed. Reg. 7044, under the federal APA and the United States Constitution; (b) the legality of the CAP under the federal APA; (c) the legality of FLHSMV's ongoing pause under the Florida APA, the Florida Constitution, and the United States Constitution; and (d) Plaintiffs' right to have their non-domiciled CDLs and CLPs processed under the pre-IFR regulatory framework.

159. Pursuant to 28 U.S.C. §§ 2201–2202, Plaintiffs seek a declaratory judgment that:

(a) The Final Rule, 91 Fed. Reg. 7044, is unlawful, unconstitutional, and void;

(b) The CAP imposed on Florida is unlawful and void;

(c) FLHSMV's ongoing pause is unlawful under the Florida APA, the Florida Constitution, and the United States Constitution;

(d) Plaintiffs are entitled to have their CDL and CLP applications processed without application of the unlawful Final Rule;

(e) The Final Rule is unlawful and FLHSMV must immediately resume processing non-domiciled CDL applications; and

(f) FLHSMV's reliance on the CAP to justify its continued pause is not a valid defense to Plaintiffs' constitutional claims.

160. Plaintiffs face irreparable harm. Loss of employment and destruction of livelihood constitute irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiffs are losing or have lost their CDLs and face imminent termination from employment. Plaintiffs are likely to succeed on the merits, as demonstrated above and as strongly supported by the D.C. Circuit's prior stay of the substantively identical IFR.

161. Injunctive relief is warranted to prevent continuing irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

a) Consolidate this action for all purposes pursuant to Federal Rule of Civil Procedure 42(a);

b) Enter a declaratory judgment declaring that:

   a. The Final Rule, 91 Fed. Reg. 7044, violates the APA and is unlawful and void;

    b.   The Final Rule violates the Due Process Clause and equal protection component of the Fifth Amendment;

    c.   The CAP is unlawful agency action and is void;

    d.   FLHSMV's pause is an unadopted rule in violation of the Florida APA;

    e.   FLHSMV's pause is an invalid exercise of delegated legislative authority;

    f.   FLHSMV's pause violates the Fourteenth Amendment and Article I, Sections 2 and 9 of the Florida Constitution;

    g.   FLHSMV's pause violates the Equal Protection Clause of the Fourteenth Amendment;

c)  Enter a preliminary injunction, on an expedited basis, and following adjudication on the merits, a permanent injunction:

    a.   Enjoining FMCSA from enforcing the Final Rule and the CAP against Florida and Plaintiffs;

    b.   Enjoining FLHSMV from continuing the pause;

    c.   Ordering FLHSMV to immediately resume accepting and processing applications for non-domiciled CDLs and CLPs;

    d.   Ordering FLHSMV to process all pending applications within thirty (30) days;

    e.   Ordering FLHSMV to reinstate, without additional testing or fees, CDLs and CLPs that expired solely due to the pause;

d)  Set aside and vacate the Final Rule, 91 Fed. Reg. 7044, and the CAP pursuant to 5 U.S.C. § 706;

e)  Retain jurisdiction to ensure compliance with the Court's orders;

56

f) Award Plaintiffs reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, 42 U.S.C. § 1988, and Fla. Stat. § 120.595;

g) Award Plaintiffs nominal damages for the violation of their constitutional rights;

h) Award such other and further relief as this Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable, including their claims for damages under 42 U.S.C. § 1983.

Dated: April 15, 2026                                    Respectfully submitted,

/s/ Arno Lemus
**Arno Javier Lemus**
FL Bar No.: 0103075
Attorney E-mail: arno@lemus.org
Lemus Law Group
1024 NW 102 PL
Miami, FL 33172
Telephone: (786) 816-2795
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2026, a true and correct copy of the foregoing was served via [CM/ECF] on all parties or their counsel of record as required by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of Florida.

/s/ Arno Lemus
Arno Lemus, Esq.