**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:26-cv-22615-JB**

R.K.G.*
M.R.H.*
A.M.R.G.*
S.R.C.*
R.P.R.*
P.R.S.G.*
R.O.G.R.*
A.G.T.*
A.M.C.*
C.O.T.M.*
E.J.C.*
D.M.F.*
M.C.A.*
D.A.S.*
Y.P.R.*
E.M.M.R.*
T.M.J.F.*
R.R.*
R.A.G.A.*

      Plaintiffs,

v.

Dave Kerner, Executive Director, Florida
Highway Safety and Motor Vehicles, in his
official capacity,

Florida Department of Highway Safety and
Motor Vehicles ("FLHSMV"),

      Defendants.

---

*Plaintiffs proceeding under a pseudonym are indicated with an asterisk. Plaintiffs will move for leave to proceed under pseudonyms shortly after the filing of this First Amended Complaint, following the conferral with Defendants required by Local Rule 7.1(a)(3).

### FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
### JOINT ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 20 AND 42

*Filed as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), within 21 days after service of the Federal Defendants' Rule 12(b)(1) Motion to Dismiss [ECF No. 16].*

**INTRODUCTION**

1. This is a civil action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured to Plaintiffs by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and, in the alternative and subject to the limitations described in Paragraph 11 below, pursuant to the Florida Administrative Procedure Act, Fla. Stat. Ch. 120, and Article I, Sections 2 and 9 of the Florida Constitution. Plaintiffs seek prospective declaratory and injunctive relief against Defendant Dave Kerner, in his official capacity as Executive Director of the Florida Department of Highway Safety and Motor Vehicles ("FLHSMV"), under Ex parte Young, 209 U.S. 123 (1908).

2. Plaintiffs are nineteen (19) commercial motor vehicle ("CMV") operators who hold, or have applied for the issuance or renewal of, non-domiciled Commercial Driver's Licenses ("CDLs") or Commercial Learner's Permits ("CLPs") issued by the State of Florida through FLHSMV. Each Plaintiff is lawfully present in the United States and holds valid, unexpired federal employment authorization. Each Plaintiff is domiciled in a foreign jurisdiction but resides in, and operates commercial vehicles within, the State of Florida. Plaintiffs are properly joined pursuant to Federal Rule of Civil Procedure 20(a) because their claims arise out of the same series of transactions and occurrences and present common questions of law and fact.

3. Plaintiffs challenge the State of Florida's own conduct: FLHSMV's categorical and indefinite "pause" on the issuance, renewal, and extension of non-domiciled CDLs and CLPs, adopted without any rulemaking, announced and maintained through unpublished agency notices, and applied to strip Plaintiffs of vested occupational credentials without individualized notice, without any opportunity to be heard, and without any pre-deprivation or post-deprivation

process of any kind. Although FLHSMV partially modified the pause on May 8, 2026, through Information Notice INFO 26-005 — resuming issuance for three narrow federal visa categories (H-2A, H-2B, and E-2) — the deprivation remains categorical as to Plaintiffs: as holders of Employment Authorization Documents ("EADs"), Temporary Protected Status ("TPS"), asylum, or refugee status, Plaintiffs fall entirely outside that carve-out and remain wholly excluded from issuance and renewal.

4. This First Amended Complaint supersedes the original Complaint (ECF No. 1) and narrows this action. Plaintiffs no longer assert any claim against the Federal Motor Carrier Safety Administration ("FMCSA"), the United States Department of Transportation, Administrator Derek D. Barrs, or Secretary Sean P. Duffy (collectively, the "former Federal Defendants"), each of whom is dismissed from this action by this amendment. Plaintiffs do not ask this Court to review, stay, enjoin, vacate, set aside, or declare invalid FMCSA's Final Rule, 91 Fed. Reg. 7044 (Feb. 13, 2026) (the "Final Rule"), its predecessor interim final rule, or the federal corrective action plan imposed on Florida (the "CAP"), and no relief requested herein runs against the United States or any federal officer or agency. Judicial review of the Final Rule is presently pending before the United States Court of Appeals for the District of Columbia Circuit on timely petitions for review filed by other parties. Allegations herein concerning the Final Rule, the interim final rule, and the CAP are pleaded solely as background and as facts bearing on whether FLHSMV's reliance on those federal actions supplies a legitimate, compelling, or rational basis for the State's own conduct. Because the former Federal Defendants are dismissed and no claim or request for relief in this pleading is asserted against them, the Federal Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [ECF No. 16] and Response in Opposition to Plaintiffs' Emergency Motion [ECF No. 17] — each

directed solely at federal claims arising under the now-superseded original Complaint — are moot. The Hobbs Act, 28 U.S.C. § 2342(3)(A), and its 60-day limitations provision, 28 U.S.C. § 2344, are inapplicable to this action, because no claim pleaded herein seeks to enjoin, set aside, suspend, or determine the validity of the Final Rule or any other order of the Secretary of Transportation, and no claim depends on establishing that the Final Rule is unlawful.

5. By this amendment, Plaintiffs withdraw only the claims and requests for relief expressly identified in Paragraph 4. Plaintiffs reserve all claims and theories not expressly withdrawn, including the right to seek relief concerning the Final Rule and the CAP in whatever forum may be appropriate, and nothing herein shall be construed as a waiver, abandonment, or adjudication of any such claim or theory.

6. The State's conduct is independently unlawful regardless of the fate of any federal rule. FLHSMV imposed and has maintained its pause across three distinct periods: first, while the interim final rule was in effect (September 29, 2025 to November 13, 2025); second — critically — for more than four months after the D.C. Circuit stayed the interim final rule and restored the prior legal framework (November 13, 2025 to March 16, 2026), a period during which no operative federal restriction prohibited Florida from issuing non-domiciled CDLs and CLPs, yet FLHSMV refused to process a single application; and third, from the Final Rule's effective date forward (March 16, 2026 to the present), during which FLHSMV has continued to exclude Plaintiffs categorically, including through INFO 26-005's three-category carve-out. At no point in any of these periods did FLHSMV conduct rulemaking, make any Florida-specific safety or compliance finding, identify any independent state interest of its own, or afford any affected credential holder any process whatsoever.

7. Plaintiffs seek: (a) a declaration that FLHSMV's pause, as adopted and as maintained and applied to Plaintiffs, violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment; (b) in the alternative, a declaration that the pause and INFO 26-005 constitute unadopted rules and invalid exercises of delegated legislative authority under the Florida Administrative Procedure Act and violate Article I, Sections 2 and 9 of the Florida Constitution; (c) preliminary and permanent injunctive relief requiring Defendant Kerner, in his official capacity, to cease enforcing the pause against Plaintiffs, to resume accepting and processing Plaintiffs' non-domiciled CDL and CLP applications and renewals under the eligibility criteria prescribed by Florida law, to process Plaintiffs' pending applications within thirty (30) days, and to reinstate, without additional testing or fees, Plaintiffs' credentials that lapsed solely by operation of the pause; and (d) all other relief this Court deems just and proper.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Fourteenth Amendment and 42 U.S.C. § 1983.

9. This Court has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. §§ 2201–2202 and Federal Rule of Civil Procedure 57.

10. Plaintiffs' claims for prospective declaratory and injunctive relief against Defendant Kerner in his official capacity are not barred by the Eleventh Amendment. A state official sued in his official capacity for prospective relief to end a continuing violation of federal law is a "person" within the meaning of 42 U.S.C. § 1983, and such suits are permitted under Ex parte Young, 209 U.S. 123 (1908). See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989).

11. This Court has supplemental jurisdiction over Plaintiffs' state-law claims (Counts III, IV, and V) pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as the federal claims. Plaintiffs plead Counts III, IV, and V expressly in the alternative to Counts I and II, and only to the extent this Court may adjudicate them consistent with the Eleventh Amendment. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984). Should this Court determine that the Eleventh Amendment forecloses adjudication of any state-law count against any Defendant, Plaintiffs respectfully request that any dismissal of such count be without prejudice to its presentation in an appropriate state forum, including a petition under Fla. Stat. § 120.56(4) before the Florida Division of Administrative Hearings, and nothing in this pleading waives Plaintiffs' right to pursue such relief.

12. No claim in this First Amended Complaint seeks judicial review of any rule, regulation, or final order of FMCSA or the Secretary of Transportation, and no claim herein arises under or invokes 28 U.S.C. § 2342 or 5 U.S.C. §§ 702–706. Complete relief on every claim pleaded herein can be granted by orders running solely against Defendant Kerner in his official capacity, without any adjudication of the validity of the Final Rule or the CAP.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, the majority of Plaintiffs reside in this District and hold or seek CDLs issued in this District, and FLHSMV operates offices and service centers in this District where CDL applications are processed and where Plaintiffs have been refused processing.

14. This action is timely. The challenged state action is ongoing and continuing, and Plaintiffs' injuries are accruing daily.

**PARTIES**

**Plaintiffs**

15. Plaintiff R.K.G.[1] is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. He is the lead Plaintiff in this action. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL expired on June 3, 2026. See Exhibit ("Exh.") A. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

16. Plaintiff M.R.H. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL will expire on June 12, 2026. See Exhibit ("Exh.") B. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of

7

employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

17. Plaintiff A.M.R.G. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL will expire on August 21, 2026. See Exhibit ("Exh.") C. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

18. Plaintiff S.R.C. is a resident of Hillsborough County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL expired on April 8, 2026. See Exhibit ("Exh.") D. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and

deprivation of constitutionally protected property and liberty interests without any process of law.

19. Plaintiff R.P.R. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL expired on May 9, 2026. See Exhibit ("Exh.") E. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

20. Plaintiff P.R.S.G. is a resident of Hillsborough County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL expired on October 30, 2025. See Exhibit ("Exh.") F. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of

employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

21. Plaintiff R.O.G.R. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL will expire on July 21, 2026. See Exhibit ("Exh.") G. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

22. Plaintiff A.G.T. is a resident of Duval County, Jacksonville, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL will expire on July 17, 2026. See Exhibit ("Exh.") H. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of

employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

23. Plaintiff A.M.C. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL expired on March 10, 2026. See Exhibit ("Exh.") I. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

24. Plaintiff C.O.T.M. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL will expire on June 11, 2026. See Exhibit ("Exh.") J. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of

11

employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

25. Plaintiff E.J.C. is a resident of Martin County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL expired on May 2, 2026. See Exhibit ("Exh.") K. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

26. Plaintiff D.M.F. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL expired on May 29, 2026. See Exhibit ("Exh.") L. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and

deprivation of constitutionally protected property and liberty interests without any process of law.

27. Plaintiff M.C.A. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL expired on April 9, 2026. See Exhibit ("Exh.") M. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

28. Plaintiff D.A.S. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL expired on May 15, 2026. See Exhibit ("Exh.") N. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and

deprivation of constitutionally protected property and liberty interests without any process of law.

29. Plaintiff Y.P.R. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL will expire on July 29, 2026. See Exhibit ("Exh.") O. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

30. Plaintiff E.M.M.R. is a resident of Hillsborough County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL will expire on August 18, 2026. See Exhibit ("Exh.") P. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of

employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

31. Plaintiff T.M.J.F. is a resident of Broward County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL expired on May 20, 2026. See Exhibit ("Exh.") Q. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

32. Plaintiff R.R. is a resident of Miami-Dade County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL expired on May 30, 2026. See Exhibit ("Exh.") R. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and

15

deprivation of constitutionally protected property and liberty interests without any process of law.

33. Plaintiff R.A.G.A. is a resident of Orange County, Florida. He holds a non-domiciled CDL, he is a professional commercial motor vehicle operator, and he depends on his CDL for his livelihood. His employment as a truck driver requires him to have a valid CDL. Plaintiff holds valid and unexpired federal Employment Authorization, but his CDL will expire on August 13, 2026. See Exhibit ("Exh.") S. As a direct result of FLHSMV's categorical pause on the issuance and renewal of non-domiciled CDLs and CLPs — adopted without rulemaking, maintained without interruption since the fall of 2025, and continued as to Plaintiff through INFO 26-005's exclusion of EAD holders — Plaintiff has been unable to renew or maintain his non-domiciled CDL, which is causing or will cause him severe economic harm, loss of employment, and deprivation of constitutionally protected property and liberty interests without any process of law.

**Defendants**

34. Defendant Dave Kerner is sued in his official capacity as Executive Director of FLHSMV, solely for prospective declaratory and injunctive relief. See Ex parte Young, 209 U.S. 123 (1908). In this capacity, Executive Director Kerner is the chief executive officer of FLHSMV and is responsible for the agency's policies and actions, including the adoption, maintenance, and enforcement of the challenged pause and of Information Notices INFO 25-019 and INFO 26-005, and he possesses the authority to direct FLHSMV personnel to resume accepting and processing non-domiciled CDL and CLP applications.

35. Defendant Florida Department of Highway Safety and Motor Vehicles ("FLHSMV") is an agency of the State of Florida established under Chapter 20, Florida Statutes. FLHSMV is the

16

state agency responsible for issuing, renewing, and regulating driver's licenses in the State of Florida, including non-domiciled CDLs and CLPs, and is the State Driver's Licensing Agency ("SDLA") for the State of Florida. FLHSMV is named as a Defendant only with respect to Counts III, IV, and V, which are pleaded in the alternative as set forth in Paragraph 11. Plaintiffs assert no claim under 42 U.S.C. § 1983 against FLHSMV.

## FACTUAL ALLEGATIONS

### I. The Federal CDL Program and Non-Domiciled CDLs

36. Congress enacted the Commercial Motor Vehicle Safety Act of 1986, 49 U.S.C. §§ 31301 et seq., to improve the safety of commercial motor vehicle operations by establishing a uniform, nationwide system for licensing commercial drivers.

37. Under the federal CDL program, each state is designated as an SDLA and is responsible for testing and licensing commercial drivers who are "domiciled" in that state. 49 C.F.R. § 383.71.

38. Federal regulations have long recognized that certain individuals who are lawfully present in the United States but "domiciled" in a foreign country may nonetheless need to obtain a CDL to work as commercial motor vehicle operators in the United States. To address this need, federal regulations authorized SDLAs to issue "non-domiciled" CLPs and CDLs to individuals who are domiciled in a foreign jurisdiction but who have established a state of residence in the issuing state. See 49 C.F.R. §§ 383.5, 383.71(f).

39. Florida law independently prescribes the eligibility criteria for commercial driver's licenses and imposes on FLHSMV a mandatory duty of issuance upon an applicant's satisfaction of those criteria. Fla. Stat. § 322.54(2) provides that "[t]he department shall issue, pursuant to the requirements of this chapter, driver licenses in accordance with the following classifications," and prescribes the Class A and Class B classifications required to operate commercial motor

17

vehicles. Fla. Stat. § 322.54(2)(a)–(b). Fla. Stat. § 322.12(2) likewise provides that "[t]he department shall examine every applicant for a driver license, including an applicant who is licensed in another state or country, except as otherwise provided in this chapter," and § 322.12(4) prescribes the examination required "for an applicant for a commercial driver license." Florida Statutes §§ 322.53 through 322.57 further establish the objective requirements for CDL issuance, including knowledge and skills testing, medical certification, identity and lawful-presence verification, and payment of fees. Nothing in Chapter 322 conditions issuance on an applicant's visa category, and nothing in Chapter 322 authorizes FLHSMV to suspend issuance of an entire credential class without individualized adjudication.

40. Florida law likewise prescribes the process FLHSMV must follow when it acts against a license. Section 322.251(1), Florida Statutes, provides that "[a]ll orders of cancellation, suspension, revocation, or disqualification issued under the provisions of this chapter" must be given either by personal delivery to the licensee or by first-class mail to the licensee's last known mailing address furnished to the department. Notice by mail "is complete upon expiration of 20 days after deposit in the United States mail," Fla. Stat. § 322.251(2), and the period of any suspension, revocation, or disqualification "shall be indicated on the order," Fla. Stat. § 322.251(3). The Legislature extended this framework expressly to commercial credentials: subsections (4) and (5) prescribe the procedures, reinstatement path, and interim Class E licensure available to "[a] person whose privilege to operate a commercial motor vehicle is temporarily disqualified" or permanently disqualified. Fla. Stat. § 322.251(4)–(5). Florida law also provides that final FLHSMV orders denying, cancelling, suspending, or revoking a license are reviewable by writ of certiorari in the circuit court of the county where the licensee resides. Fla. Stat. § 322.31. Together, these provisions establish the individualized

18

notice, statement of grounds, and judicial-review process that Florida law attaches to FLHSMV actions depriving a person of driving privileges.

41. For years, Florida — through FLHSMV — lawfully issued non-domiciled CDLs and CLPs to thousands of qualified individuals who met all applicable federal and state requirements, including identity verification, lawful-presence verification, skills and knowledge testing, and medical certification.

42. The non-domiciled CDL program has been critical to the commercial transportation industry in Florida and nationwide. An estimated 16,000 to 20,000 Florida-based CDL holders who are domiciled in foreign jurisdictions drive trucks, buses, and other commercial vehicles that move goods and passengers throughout the state and across the nation.

**II. The Federal Regulatory Backdrop (Pleaded as Background Only)**

43. The allegations in this Section II are pleaded as background and as facts bearing on whether FLHSMV's stated reliance on federal action supplies any legitimate, compelling, or rational basis for the State's own conduct. As set forth in Paragraphs 4 and 12, Plaintiffs do not seek review of, or any relief concerning, any federal rule or order in this action.

44. On September 29, 2025, FMCSA published an interim final rule titled Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46,509 (the "IFR"), severely restricting the authority of SDLAs to issue and renew non-domiciled CLPs and CDLs. FMCSA promulgated the IFR without prior notice-and-comment, invoking the "good cause" exception of 5 U.S.C. § 553.

45. On November 13, 2025, following challenges by affected CDL holders, industry groups, and state officials, the United States Court of Appeals for the District of Columbia Circuit issued a stay of the IFR pending review. Rivera Lujan v. FMCSA, No. 25-1215, 2025 WL 3182504

19

(D.C. Cir. Nov. 13, 2025). The stay restored the legal framework that existed before the IFR's publication and expressly provided that "States are not prohibited from issuing non-domiciled CDLs and commercial learner's permits in accordance with the FMCSA's regulations and guidance in effect immediately prior to issuance of the interim final rule." The stay order reflected the panel's preliminary assessment, at the stay stage, that petitioners were likely to succeed on identified grounds; it was not a merits adjudication.

46. On February 13, 2026, FMCSA published a final rule, 91 Fed. Reg. 7044, effective March 16, 2026, titled "Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)" (the "Final Rule"). The Final Rule restricts eligibility for non-domiciled CLPs and CDLs exclusively to holders of three categories of employment-based nonimmigrant visas — H-2A, H-2B, and E-2 — and eliminates the use of Employment Authorization Documents as proof of eligibility, thereby rendering EAD holders, DACA recipients, asylees, refugees, and TPS holders ineligible to obtain or renew non-domiciled commercial driving credentials. 91 Fed. Reg. at 7044–45, 7091–93, 7102–03.

47. FMCSA's own rulemaking record concedes the absence of a safety nexus for the domicile-based line it drew: FMCSA acknowledges that it lacks "sufficient evidence, derived from well-designed, rigorous, quantitative analyses, to reliably demonstrate a measurable empirical relationship between the nation of domicile for a CDL driver and safety outcomes in the United States." 91 Fed. Reg. at 7064. FMCSA's data further reflect that non-domiciled CDL holders constitute approximately 5.3% of all CDL holders yet account for a disproportionately small share of fatal crashes. 91 Fed. Reg. at 7060–65. These record facts are pleaded here because, as alleged below, FLHSMV has identified no state interest of its own and has instead borrowed

the federal rationale wholesale; the federal record's conceded evidentiary vacuum therefore bears directly on whether any governmental interest supports the State's conduct.

48. The federal regulatory framework itself contemplates individualized — not categorical — procedures for the removal of a non-domiciled credential. Under the downgrade procedure codified by the Final Rule, 49 C.F.R. § 383.73(f)(5), a State that receives information from FMCSA, Department of Homeland Security, Department of State, or another federal agency with jurisdiction that a specific non-domiciled credential holder's immigration status has changed or that the holder no longer qualifies must complete a downgrade of that driver's CDL within thirty (30) days and record it on that driver's CDLIS record, and 49 C.F.R. Part 384 prescribes the corresponding State recordkeeping and disqualification procedures. The trigger under this framework is a particularized governmental notification concerning a specific driver — not a suspension of processing for an entire credential class. These provisions are pleaded as background only: they demonstrate that individualized treatment of credential holders is contemplated, feasible, and administrable under every applicable legal framework, and that a blanket freeze is not a procedure prescribed or required by the federal framework FLHSMV purported to implement.

49. The validity of the Final Rule is presently before the D.C. Circuit on timely petitions for review filed by other parties pursuant to 28 U.S.C. § 2342(3)(A). Those petitions are fully briefed and are expected to be argued in September 2026. On May 5, 2026, a divided panel of the D.C. Circuit denied a motion to stay the Final Rule pending review, with one judge dissenting and indicating he would have granted the stay. A denial of a stay is not a merits ruling; the lawfulness of the Final Rule remains pending and undecided in the court of appeals, and nothing in this action asks this Court to decide it.

50. Upon information and belief, prior to or contemporaneous with the IFR, FMCSA imposed or threatened to impose a corrective action plan (the "CAP") on the State of Florida related to Florida's non-domiciled CDL issuance practices, requiring FLHSMV to "pause" issuance and renewal of non-domiciled CDLs and CLPs until FLHSMV demonstrates compliance with FMCSA's regulations and guidance to FMCSA's satisfaction. Plaintiffs do not seek review of the CAP in this action. The CAP is pleaded here because it is FLHSMV's sole stated justification for the pause: as alleged below, FLHSMV has invoked alignment with FMCSA's directives — and nothing else — as the basis for suspending an entire class of state-issued occupational credentials.

### III. FLHSMV's Pause: Adoption Without Rulemaking, Maintenance Without Federal Compulsion, and Continuation Without Process

51. On or about September 30, 2025, FLHSMV ceased issuing, renewing, and extending non-domiciled CDLs and CLPs statewide (the "pause").

52. On September 30, 2025, FLHSMV issued Information Notice INFO 25-019 through its Division of Motorist Services, under the name and authority of Executive Director Dave Kerner, titled "Temporary Pause on Non-Immigrant CLP and CDL Issuance" (the "September Notice"). The September Notice stated that USDOT had "announced an emergency interim final rule to strengthen federal oversight of how states issue non-domiciled commercial learner's permits (CLPs) and commercial driver's licenses (CDLs)"; that "the Department is taking additional steps to align its policies with directives from the USDOT and the Federal Motor Carrier Safety Administration (FMCSA)"; and that, "[e]ffective immediately, the issuance of non-domiciled CDLs and CLPs, also known as non-immigrant or Temporary CDLs or CLPs, is paused until further notice." The September Notice cited no provision of Florida

22

law, made no findings of any kind, identified no affected licensees, prescribed no process and no avenue of review, and directed personnel needing additional information to "contact your next level of management."

53. FLHSMV did not promulgate the pause through any rulemaking process under the Florida APA. FLHSMV did not publish a proposed rule, did not provide notice to affected parties, did not conduct any hearing, and did not adopt the pause as an emergency rule with the required findings and time limitations under Fla. Stat. § 120.54(4).

54. FLHSMV did not provide Plaintiffs or any affected CDL holder with individualized notice, an opportunity to be heard, or any pre-deprivation or post-deprivation process before ceasing to process, issue, or renew their commercial driving credentials.

55. FLHSMV sent no individualized notice of any kind to any Plaintiff or, upon information and belief, to any of the estimated 16,000 to 20,000 affected Florida credential holders. INFO 25-019 and INFO 26-005 are general agency notices directed to FLHSMV personnel and issuance offices, not to licensees. No Plaintiff received personal delivery or first-class mailing of any order as Fla. Stat. § 322.251 prescribes; no Plaintiff received any written statement of the grounds for FLHSMV's refusal to process his credential; and the twenty-day notice-completion period that § 322.251(2) prescribes was never triggered for any Plaintiff.

56. FLHSMV likewise issued no final order to any Plaintiff. No Plaintiff received an order citing the statutory basis for the action taken against his credential, and no Plaintiff was advised of the right to seek certiorari review under Fla. Stat. § 322.31. Because no final order ever issued, the thirty-day window for certiorari review was never opened, and the exclusive channel Florida law provides for judicial review of individual licensing action was never made available to any Plaintiff. The pause thus operated to strip Plaintiffs of their credentials while

simultaneously foreclosing the very avenue of review that Florida law attaches to such deprivations. And to the extent FLHSMV contends that its refusal to process renewals is not a "cancellation, suspension, revocation, or disqualification" subject to these procedures, that contention only confirms the constitutional defect: FLHSMV extinguished an entire class of credentials through a mechanism to which, on the State's own account, no notice, no order, and no avenue of review attaches at all.

57. Nor did FLHSMV follow the individualized federal downgrade procedure described in Paragraph 48. FLHSMV received no particularized notification from any federal agency concerning any Plaintiff's status, initiated no thirty-day downgrade for any Plaintiff, and recorded no individualized action on any Plaintiff's CDLIS record. FLHSMV thus bypassed both the process prescribed by state law — individual notice, a final order stating its statutory basis, and advisement of certiorari rights — and the process prescribed by the federal framework it claimed to be implementing, and instead suspended an entire credential class by internal notice.

58. The pause also exceeded the scope of any asserted federal directive. From its inception until on or about May 13, 2026, FLHSMV refused to process any non-domiciled CDL or CLP application whatsoever — including applications from H-2A, H-2B, and E-2 visa holders who were eligible for issuance under the IFR and the Final Rule alike. That across-the-board refusal was required by no federal rule at any time, and it confirms that the breadth, manner, and duration of the pause were the State's own policy choices.

59. Individualized written notice to affected credential holders was demonstrably feasible and administrable at scale. Upon information and belief, at least one other State licensing agency operating under a corrective action plan during the same period mailed individualized written

cancellation notices to each of approximately 17,400 affected credential holders, specifying an effective date sixty (60) days out, identifying the documentation the holder could provide, and describing a path to reapply. FLHSMV — acting on the same federal directives during the same period — provided nothing.

60. On November 13, 2025, the D.C. Circuit had stayed the IFR and expressly confirmed that states were not prohibited from issuing such credentials under the pre-IFR framework, and the Final Rule had not yet taken effect. Throughout this entire period, FLHSMV nonetheless refused to process, issue, or renew any non-domiciled CDL or CLP, including the credentials of Plaintiffs whose licenses expired or required renewal during that window. FLHSMV documented this choice. On November 24, 2025 — eleven days after the stay — FLHSMV issued a second Information Notice, again numbered INFO 25-019 and again issued under the name and authority of Executive Director Dave Kerner, titled "UPDATE: Temporary Pause on Non-Immigrant CLP and CDL Issuance" (the "November Update"). The November Update expressly acknowledged that "the U.S. Court of Appeals has since placed an administrative stay on the rule," yet stated that FLHSMV "is taking proactive steps to ensure compliance with federal requirements" and that "FLHSMV has temporarily paused the issuance of non-domiciled (non-immigrant) CLPs and CDLs." The November Update stated that "[t]his pause will remain in effect until the credential design can be updated to display the federally required designation 'Non-Domiciled' in place of 'Temporary,'" that FLHSMV was "actively working with its credentialing vendor, Idemia, to implement the necessary system enhancements," and that "[t]hese updates are essential for the Department to maintain its certification to issue federally compliant CDLs and CLPs." The November Update thus confirms three facts central to this action: FLHSMV continued the pause with knowledge that the federal rule had been

stayed; it characterized continuation as its own "proactive" choice rather than a federally compelled act; and the only Florida-specific reason it has ever articulated for the pause was an administrative one — a credential-redesign and vendor-system project — and not any safety, fitness, fraud-prevention, or compliance finding concerning Plaintiffs or non-domiciled drivers as a class. Like the September Notice, the November Update cited no provision of Florida law, made no findings as to any licensee, identified no affected individuals, prescribed no process and no avenue of review, and directed personnel needing additional information to "contact your next level of management." FLHSMV thus confirmed its intention to continue applying the pause despite having made no Florida-specific safety finding, compiled no factual record, and identified no independent state interest beyond an administrative credential-design objective; its sole stated basis remained alignment with FMCSA's directives, notwithstanding that the directive's regulatory predicate had been stayed by a federal court.

61. On May 8, 2026, FLHSMV issued Information Notice INFO 26-005 through its Division of Motorist Services, under the name and authority of Executive Director Dave Kerner, titled "Resume Issuance of CDL and CLP for Non-Domiciled Individuals." INFO 26-005 announced that, "[e]ffective Wednesday, May 13, 2026, all CDL and CLP issuances to non-domiciled individuals may resume," and stated that "[t]he Department has aligned procedures with the new federal requirements, which restrict eligibility and strengthen verification requirements for non-domiciled commercial drivers." INFO 26-005 restricts eligibility to applicants presenting an unexpired foreign passport and a Form I-94/I-94A with an unexpired admit-until date reflecting one of three "employment[]based nonimmigrant classifications" — H-2A, H-2B, or E-2, the three categories specified in the Final Rule — and directs without qualification: "If the customer does not have one of the three visa categories above, the customer cannot be

issued a CDL or CLP." The only option INFO 26-005 affords an ineligible holder is surrender of commercial driving privileges altogether: "Ineligible customers who are up for renewal may downgrade to a Class E driver license," a credential that does not authorize operation of a commercial motor vehicle. Like both the September Notice and the November Update, INFO 26-005 cites no provision of Florida law, makes no findings, prescribes no individualized process and no avenue of review, directs personnel needing additional information to "contact your next level of management or the Field Support Center," and incorporates further unpublished internal directives (referencing "DL-26-010" and the "ORION Operations Manual"); and it was issued without notice of proposed rulemaking, without opportunity for public comment, without adoption as an emergency rule, and without any of the procedural protections Chapter 120 requires.

62. INFO 26-005's partial resumption does not diminish the categorical character of the deprivation as applied to Plaintiffs; it sharpens it. By drawing substantive eligibility distinctions among applicants by visa category through an unpublished notice, FLHSMV has issued an agency statement that even more plainly prescribes policy and determines party rights than the original bare pause. INFO 26-005 also confirms the exclusion's breadth: it treats as a restricted "issuance transaction" every transaction type — "[a]mending," "[c]orrecting," "[r]eprinting," "[r]einstating," "[r]eplacing," "[a]ddress [c]hanges," "[d]uplicating a previously issued CLP or CDL," "[t]ransfer," "[r]enew," and "[u]pgrading" — so that an excluded holder cannot obtain even a duplicate, corrected, or reinstated credential. And the exclusion remains categorical as to Plaintiffs: as EAD holders, TPS holders, asylees, and refugees, Plaintiffs fall entirely outside INFO 26-005's three-category carve-out and remain wholly excluded from issuance and renewal. FLHSMV now processes non-domiciled

27

credentials for some federally work-authorized noncitizens while categorically refusing them to others — including every Plaintiff — whom the federal government has equally authorized to work.

63. The pause, as announced in INFO 25-019 and as modified by INFO 26-005, is an established state procedure: a formal, deliberate policy of general applicability, adopted at the highest level of the agency, reduced to writing and issued under the Executive Director's name and authority, communicated to FLHSMV personnel statewide, and applied uniformly in licensing transactions at FLHSMV customer service centers. It is not a random or unauthorized act of any individual official. The deprivations it works — the constructive revocation of existing credentials as they expire and the categorical denial of renewals and new applications — are the foreseeable, intended, and inevitable result of the policy itself.

64. Upon information and belief, multiple Plaintiffs have visited FLHSMV offices seeking to renew their CDLs and have been turned away without explanation, without written notice of any right to contest the refusal, and without any opportunity to demonstrate that they satisfy every eligibility requirement prescribed by Florida law.

65. The pause supplies no standards, criteria, or timeline for its own termination as to Plaintiffs. As confirmed by FLHSMV's own notices, the conditions for any further resumption are set entirely by FMCSA and lie wholly outside any criteria of Florida law that Plaintiffs could satisfy. The pause has been in effect without interruption since September 30, 2025 — the date on which INFO 25-019 paused issuance "[e]ffective immediately" and "until further notice" — and as to Plaintiffs it remains in effect today, indefinite in duration.

66. At no time has FLHSMV asserted or identified any legitimate state interest — in safety, fitness, fraud prevention, or regulatory need — served by refusing to process Plaintiffs' applications.

28

FLHSMV's sole stated justification, in the September Notice, the November Update, and INFO 26-005 alike, is alignment with federal directives. The only Florida-specific reason FLHSMV ever offered was the administrative credential-redesign and vendor-system objective recited in the November Update, as alleged in Paragraph 60 — an interest in the convenience of its own card-printing operations, not in highway safety, driver fitness, or fraud prevention, and one that cannot justify the categorical and indefinite deprivation of Plaintiffs' occupational credentials. FLHSMV has never made any Florida-specific finding that non-domiciled CDL holders as a class, or any Plaintiff individually, present any safety risk, compliance deficiency, or integrity concern. FLHSMV's own years-long practice of lawfully issuing non-domiciled CDLs under the identical state statutory framework confirms that no such state interest exists.

67. FLHSMV's adoption, maintenance, and application of the pause — including its maintenance during the November 13, 2025 to March 16, 2026 period when no operative federal restriction existed, and its continued categorical exclusion of Plaintiffs after May 8, 2026 — constitutes the State's own conduct, undertaken under color of state law, for which the State Defendants bear full responsibility. A state licensing authority cannot shield its own conduct from constitutional scrutiny by attributing it to a federal directive, particularly where the state has adopted and applied the operative classification through its own instruments and where it asserts no interest of its own.

## IV. Harm to Plaintiffs

68. Each of the nineteen Plaintiffs has suffered and continues to suffer concrete, particularized, and irreparable harm as a direct result of the State Defendants' conduct.

69. Loss of Livelihood. Commercial driving is Plaintiffs' sole or primary source of income. Without valid CDLs, Plaintiffs cannot legally operate commercial motor vehicles and have lost their jobs or been unable to obtain employment in the only field for which they are trained and qualified.

70. Financial Devastation. Plaintiffs have suffered lost wages, inability to pay mortgages and rent, inability to support their families, loss of health insurance, accumulation of debt, and, in some cases, threat of eviction or foreclosure. The economic harm increases with each passing day and cannot be fully remedied by monetary damages.

71. Loss of Professional Standing. Plaintiffs' inability to maintain their CDLs has resulted in gaps in their driving records, loss of seniority, loss of employer relationships, and damage to their professional reputations. Certain Plaintiffs face the prospect of having to undergo re-testing and re-certification even if the pause is lifted, at significant additional cost and delay.

72. Deprivation of Property Interest. Plaintiffs hold vested property interests in their CDLs and CLPs, which are government-issued licenses that entitle them to engage in the occupation of commercial driving. These licenses were obtained through compliance with all applicable requirements, payment of fees, and passage of rigorous testing, and Florida law creates a legitimate claim of entitlement to issuance and renewal upon satisfaction of objective statutory criteria, as alleged in Paragraph 39. A CDL is not a mere privilege — it is a constitutionally protected property interest. See Bell v. Burson, 402 U.S. 535, 539 (1971); Barry v. Barchi, 443 U.S. 55, 64 (1979); Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).

73. Deprivation of Liberty Interest. Plaintiffs hold liberty interests in pursuing their chosen occupation and in their freedom from arbitrary governmental action. See Bd. of Regents v. Roth, 408 U.S. 564, 572 (1972); Greene v. McElroy, 360 U.S. 474, 492 (1959).

74. Stigma and Reputational Harm. The indefinite pause, predicated on vague assertions of regulatory non-compliance and "integrity" concerns, brands Plaintiffs with a stigma of untrustworthiness and association with fraud, despite the absence of any individualized finding of wrongdoing. This stigma-plus-deprivation combination independently triggers due process protections. See Paul v. Davis, 424 U.S. 693, 708–09 (1976).

75. Ongoing and Irreparable Nature of Harm. The harm is ongoing and compounds daily. Each day the pause continues, Plaintiffs lose additional income, fall further into debt, and suffer additional deprivation of their constitutional rights. This harm is irreparable because no amount of monetary damages can fully compensate for the ongoing loss of constitutional rights, professional deterioration, and family hardship. See Elrod v. Burns, 427 U.S. 347, 373 (1976); Deerfield Med. Ctr. v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. 1981).

## JOINDER ALLEGATIONS

76. Plaintiffs bring this action jointly pursuant to Federal Rule of Civil Procedure 20(a)(1). All nineteen Plaintiffs' claims arise out of the same series of transactions and occurrences: FLHSMV's adoption and maintenance of a single, uniform pause applied categorically to all non-domiciled CDL and CLP holders and applicants, and its continued categorical exclusion of all EAD-holding, TPS-holding, asylee, and refugee applicants following INFO 26-005. Each Plaintiff has been subjected to the identical state conduct.

77. The following questions of law and fact are common to all Plaintiffs: (a) whether FLHSMV's pause, as adopted, maintained, and applied, deprives Plaintiffs of property and liberty interests without due process of law in violation of the Fourteenth Amendment; (b) whether the pause and INFO 26-005 classify on the basis of alienage and deny Plaintiffs equal protection of the laws in violation of the Fourteenth Amendment; (c) in the alternative, whether the pause and

31

INFO 26-005 are unadopted rules and invalid exercises of delegated legislative authority under the Florida APA; (d) in the alternative, whether the pause violates Article I, Sections 2 and 9 of the Florida Constitution; and (e) whether Plaintiffs are entitled to declaratory and injunctive relief.

78. Joinder will not prejudice any Defendant. The conduct at issue is identical as to all Plaintiffs: the same pause, the same notices, and the same categorical exclusion. To the extent any individual issues arise, the Court may order separate proceedings on such issues pursuant to Federal Rule of Civil Procedure 42(b) without disrupting the joint adjudication of the common questions. Pursuant to Federal Rule of Civil Procedure 42(a), Plaintiffs respectfully request consolidation of their claims for hearing and trial.

## CAUSES OF ACTION

### COUNT I

**Violation of 42 U.S.C. § 1983 — Deprivation of Procedural Due Process**

**Under the Fourteenth Amendment**

**(Against Defendant Kerner in His Official Capacity)**

79. Plaintiffs incorporate by reference the allegations contained in Paragraphs 15 through 33 (identifying Plaintiffs), Paragraphs 34 through 35 (identifying Defendants), Paragraphs 36 through 42 (the federal CDL program and Florida's mandatory issuance framework), Paragraphs 51 through 67 (FLHSMV's pause), and Paragraphs 68 through 75 (harm to Plaintiffs, including deprivation of property and liberty interests), as though fully set forth herein.

80. Section 1983 provides a cause of action against any "person" who, acting under color of state law, deprives another of rights secured by the Constitution. 42 U.S.C. § 1983. Executive Director Kerner is sued in his official capacity solely for prospective injunctive and declaratory relief. See Ex parte Young, 209 U.S. 123 (1908); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989).

81. Within the Eleventh Circuit, a procedural due process claim under § 1983 requires: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994); Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). All three elements are satisfied here.

82. Plaintiffs hold protected property interests in their CDLs and CLPs. Florida law creates a legitimate claim of entitlement to a CDL upon satisfaction of objective statutory and regulatory requirements, including the mandatory issuance provisions alleged in Paragraph 39. See Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) (property interest arises where state law creates a legitimate claim of entitlement); Bell v. Burson, 402 U.S. 535, 539 (1971) (driver's license is a protected property interest); Barry v. Barchi, 443 U.S. 55, 64 (1979) (occupational license); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–41 (1985) (the Due Process Clause guarantees that protected interests cannot be extinguished except pursuant to constitutionally adequate procedures). Plaintiffs also hold protected liberty interests in pursuing their chosen occupation. See Greene v. McElroy, 360 U.S. 474, 492 (1959).

83. Defendant Kerner, acting under color of state law as chief executive officer of FLHSMV, has deprived Plaintiffs of these interests through the pause: existing credentials are constructively revoked as they reach expiration and cannot be renewed; pending applications are categorically

denied or refused processing; and no Plaintiff has received any individualized determination of any kind. The deprivation occurred and continues to occur regardless of each Plaintiff's satisfaction of every eligibility criterion prescribed by Florida law.

84. The pause is an established state procedure — a formal, deliberate, agency-wide policy of general applicability, issued in writing under the Executive Director's name and authority and applied uniformly statewide, as alleged in Paragraph 63 — and not a random, unauthorized act of a rogue official. Because the resulting deprivations are foreseeable and flow from an established state procedure, pre-deprivation process was required, and the availability of post-deprivation state remedies does not cure the constitutional deficiency. See Zinermon v. Burch, 494 U.S. 113, 136 (1990); Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982).

85. The process Florida law itself prescribes confirms both the existence of Plaintiffs' protected interests and the inadequacy of what they received. Florida law requires individualized, personally delivered or mailed notice before any cancellation, suspension, revocation, or disqualification takes effect, Fla. Stat. § 322.251, and a final order citing its statutory basis and advising the licensee of the right to certiorari review in the circuit court, Fla. Stat. § 322.31, as alleged in Paragraph 40. As alleged in Paragraphs 55 and 56, FLHSMV provided none of this: no individualized notice, no final order, no statement of grounds, no advisement of review rights — and, because no final order ever issued, the exclusive state channel for judicial review of individual licensing action was never opened to any Plaintiff. The federal framework FLHSMV purported to implement likewise prescribes an individualized downgrade procedure that FLHSMV bypassed entirely, as alleged in Paragraphs 48 and 57. Every applicable legal framework — state and federal — thus contemplated individualized process; the categorical

34

suspension FLHSMV adopted instead is a procedure of its own invention, prescribed by no law.

86. Under the balancing test of Mathews v. Eldridge, 424 U.S. 319, 335 (1976), the Court considers: (i) the private interest affected by the official action; (ii) the risk of erroneous deprivation through the procedures used, and the probable value of additional or substitute procedural safeguards; and (iii) the Government's interest, including the function involved and the fiscal and administrative burdens of additional procedural requirements. Each factor compels a finding that Plaintiffs have been denied due process.

> (a) The private interest at stake. The ability to pursue one's livelihood and support one's family is a private interest of the highest order. See Goldberg v. Kelly, 397 U.S. 254, 264 (1970); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 543 (1985). Commercial driving is Plaintiffs' sole or primary source of income; without valid CDLs, they cannot legally operate commercial motor vehicles and face the destruction of their earning capacity.

> (b) The risk of erroneous deprivation. The risk of erroneous deprivation is absolute. FLHSMV applied a categorical exclusion without any individualized assessment of any Plaintiff's qualifications, driving record, compliance history, or eligibility under Florida law, and provided no notice, no opportunity to be heard, and no pre- or post-deprivation hearing. A categorical exclusion inherently fails to distinguish between any individuals at all: a driver with a ten-year unblemished record in the United States is treated identically to a driver with no U.S. driving history. Any individualized review — such as an audit of driving records, verification of medical certification, or assessment of compliance history, using records that already exist

35

in state and federal databases — would confirm that Plaintiffs satisfy every criterion Florida law prescribes. Individualized notice at this scale was demonstrably feasible, as alleged in Paragraph 59, and the individualized procedures prescribed by Fla. Stat. §§ 322.251 and 322.31 and by the federal downgrade framework already existed; FLHSMV simply declined to use them. Indeed, INFO 26-005 itself confirms FLHSMV's capacity for individualized, transaction-level verification: it requires that every favored applicant "be verified through the Verification of Lawful Status (VLS) check" and routes individual files to a Document Validation Unit — the same individualized machinery FLHSMV could have used, but never offered, to assess Plaintiffs. The probable value of even minimal additional safeguards is therefore high. See Mackey v. Montrym, 443 U.S. 1, 13 (1979).

(c) The governmental interest. This factor weighs against the State with particular force because FLHSMV asserts no legitimate regulatory interest of its own. As alleged in Paragraph 66, FLHSMV's sole stated justification for the pause — in the September Notice, the November Update, and INFO 26-005 alike — is alignment with federal directives; FLHSMV has made no Florida-specific safety, fitness, or compliance finding of any kind, and the only Florida-specific reason it ever articulated was an administrative credential-redesign objective that serves no safety or fitness function, as alleged in Paragraph 60. Having borrowed the asserted federal interest wholesale, the State is left with no genuine governmental interest where the federal rulemaking record itself concedes the absence of evidence linking domicile to safety outcomes, as alleged in Paragraph 47. And whatever weight any borrowed interest might carry, it cannot justify the complete absence of process:

the State could have employed individualized review, enhanced documentation requirements, or transition procedures with interim renewals, at minimal administrative burden, rather than a categorical, standardless, and indefinite suspension.

87. The pause deprived Plaintiffs of protected interests without providing: (a) individualized notice of the grounds for the deprivation, by the means Fla. Stat. § 322.251 prescribes or any other means; (b) an opportunity to be heard before or after the deprivation; (c) an opportunity to demonstrate individual qualifications; (d) any administrative appeal, waiver, or exemption mechanism; (e) any final order citing a statutory basis or advising of the right to certiorari review under Fla. Stat. § 322.31, such that the exclusive state channel for judicial review of individual licensing action was never opened; or (f) any timeline, standard, or criteria of Florida law by which the exclusion of Plaintiffs would end. The pause has been in effect without interruption since the fall of 2025 and, as to Plaintiffs, remains categorical and indefinite notwithstanding INFO 26-005's partial resumption for three visa categories to which no Plaintiff belongs.

88. Defendant Kerner's adoption, maintenance, and enforcement of the pause without any pre-deprivation process, in connection with an established state procedure, violates the Due Process Clause of the Fourteenth Amendment and is actionable under 42 U.S.C. § 1983. Plaintiffs are entitled to prospective declaratory and injunctive relief.

**COUNT II**

**Violation of 42 U.S.C. § 1983 — Denial of Equal Protection**

**Under the Fourteenth Amendment**

**(Against Defendant Kerner in His Official Capacity)**

89. Plaintiffs incorporate by reference the allegations contained in Paragraphs 15 through 33 (identifying Plaintiffs), Paragraphs 34 through 35 (identifying Defendants), Paragraphs 43 through 50 (the federal regulatory backdrop, pleaded as background bearing on the absence of any legitimate state interest), Paragraphs 51 through 67 (FLHSMV's pause, including its categorical application to Plaintiffs and FLHSMV's failure to assert any independent state interest), and Paragraphs 68 through 75 (harm to Plaintiffs), as though fully set forth herein.

90. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This guarantee extends to all persons within a State's jurisdiction regardless of immigration status. See Plyler v. Doe, 457 U.S. 202, 210 (1982).

91. FLHSMV's pause draws a classification along lines of alienage and foreign domicile: it applies exclusively to noncitizens domiciled abroad and affects no United States citizen. State classifications based on alienage are subject to strict scrutiny. Graham v. Richardson, 403 U.S. 365, 371–72 (1971). Defendant Kerner cannot satisfy that standard. The pause serves no compelling state interest: it rests entirely on alignment with federal directives whose validity is contested and pending before the D.C. Circuit, rather than on any independent state determination of safety, fitness, or regulatory need, and FLHSMV has identified no state interest of its own, as alleged in Paragraph 66. Nor is the categorical and indefinite exclusion of all Plaintiffs narrowly tailored to any interest the State could assert.

38

92. INFO 26-005 deepens the constitutional violation. As implemented through INFO 26-005, FLHSMV now issues non-domiciled credentials to holders of three favored visa categories (H-2A, H-2B, and E-2) while categorically refusing them to Plaintiffs and other EAD holders, TPS holders, asylees, and refugees whom the federal government has equally authorized to work. A state licensing authority independently violates equal protection when it disfavors one class of federally work-authorized noncitizens relative to others: a licensing scheme that distinguishes among federally work-authorized noncitizens cannot survive even rational basis review when the federal government has already deemed those noncitizens lawfully present and authorized to work. See Ariz. Dream Act Coal. v. Brewer, 855 F.3d 957, 966–70 (9th Cir. 2017), amending and superseding 818 F.3d 901 (9th Cir. 2016) (invalidating a state licensing agency's refusal to issue driver's licenses to EAD-holding DACA recipients, and holding that "in all relevant respects, DACA recipients are similarly situated to other categories of noncitizens who may rely on EADs to obtain drivers' licenses").

93. That FLHSMV's eligibility line tracks a distinction originally drawn by FMCSA does not immunize the State's own adoption and application of that line through its own instruments. FLHSMV is the licensing authority; the pause and INFO 26-005 are its own policies; and the arbitrariness of the line FLHSMV chose to adopt — disfavoring EAD holders, asylees, refugees, and TPS holders while admitting visa holders with no greater claim to U.S. driving fitness — reinforces the conclusion that the State's adoption of it lacks any legitimate, independent state basis.

94. In the alternative, even if strict scrutiny did not apply, the pause fails rational basis review. Plaintiffs are similarly situated in all relevant respects to the CDL holders and applicants whose applications FLHSMV continues to process: non-domiciled CDL holders have satisfied the

39

identical testing requirements, passed the identical medical certifications, submitted the identical identity and lawful-presence verifications, and paid the identical fees as all other CDL holders, and Plaintiffs are federally work-authorized to the same degree as the visa holders INFO 26-005 now admits. Where a classification imposes a broad and undifferentiated disability on a single group and its breadth is so discontinuous with the reasons offered for it that it appears inexplicable by anything but its effect on the disfavored class, it bears no rational relationship to a legitimate state interest. See Romer v. Evans, 517 U.S. 620, 632 (1996); City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 446–47 (1985). A bare desire to harm a politically unpopular group is not a legitimate governmental interest. See Dep't of Agric. v. Moreno, 413 U.S. 528, 534 (1973).

95. No legitimate state interest rationally supports the differential treatment. FLHSMV has identified no safety concern, compliance deficiency, or regulatory need specific to non-domiciled CDL holders generally, or to EAD-holding applicants relative to H-2A, H-2B, and E-2 visa holders specifically. FLHSMV's years-long prior practice of issuing non-domiciled CDLs under the identical Florida statutory framework demonstrates that the classification is not safety-related, and the federal rulemaking record on which FLHSMV exclusively relies itself concedes the absence of evidence linking domicile to safety outcomes, as alleged in Paragraph 47.

96. Multiple objective indicia, evaluated under Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266–68 (1977), and Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979), support an inference that the pause reflects discriminatory animus or, at minimum, irrational governmental action:

(a) Disparate impact. The pause falls exclusively on noncitizens, primarily individuals from Latin American, Caribbean, and other non-European nations. No U.S. citizen is affected.

(b) Departures from normal procedures. FLHSMV adopted and has maintained the pause and INFO 26-005 without promulgating any rule under the Florida APA, without invoking the emergency-rule procedure and its required findings, without providing the individualized notice and final orders that Fla. Stat. §§ 322.251 and 322.31 require, without following the individualized federal downgrade procedure it claimed to be implementing, and without providing any form of individualized notice or hearing — departures from established procedural norms that are probative of improper motive.

(c) Continuation despite changed circumstances. FLHSMV maintained the pause for more than four months after the D.C. Circuit's stay of the IFR restored the legal framework under which non-domiciled CDLs had lawfully issued for years, as alleged in Paragraph 60. FLHSMV did so with documented knowledge that the rule had been stayed: in the November Update, FLHSMV acknowledged the stay yet elected to continue the pause as a "proactive" measure, citing only an administrative credential-redesign objective and no safety, fitness, or compliance concern, as alleged in Paragraph 60. The persistence of the exclusion in the absence of any operative federal restriction during that period — coupled with the State's own contemporaneous admission that it was choosing to continue — supports an inference that the classification is maintained for reasons other than its stated justification.

41

97. Defendant Kerner's adoption, maintenance, and enforcement of the pause and INFO 26-005's categorical exclusion of Plaintiffs denies Plaintiffs the equal protection of the laws in violation of the Fourteenth Amendment and is actionable under 42 U.S.C. § 1983. Plaintiffs are entitled to prospective declaratory and injunctive relief.

## COUNT III

### In the Alternative — Violation of the Florida APA: Unadopted Rule

### Fla. Stat. §§ 120.52(16), 120.54, 120.56(4)

### (Against Defendants FLHSMV and Kerner)

98. This Count is pleaded in the alternative to Counts I and II, and only to the extent the Court may adjudicate it consistent with the Eleventh Amendment, as set forth in Paragraph 11. Plaintiffs incorporate by reference the allegations contained in Paragraphs 34 through 35 (identifying Defendants), Paragraphs 39 through 40 (Florida's statutory issuance and procedural framework), and Paragraphs 51 through 67 (FLHSMV's pause, INFO 25-019, and INFO 26-005, including the absence of any rulemaking), as though fully set forth herein.

99. The Florida APA defines a "rule" as "each agency statement of general applicability that implements, interprets, or prescribes law or policy." Fla. Stat. § 120.52(16). An agency may not adopt a rule without complying with the rulemaking procedures of Fla. Stat. § 120.54, and under Fla. Stat. § 120.56(4) an agency may not base action that determines the rights of a party on an unadopted rule. An unwritten or unpublished agency policy of general applicability that purports to determine the rights of those who come before the agency is a "rule" subject to Chapter 120. See Dep't of Highway Safety & Motor Vehicles v. Schluter, 705 So. 2d 81, 84 (Fla. 1st DCA 1997); accord Grabba-Leaf, LLC v. Dep't of Bus. & Prof'l Regulation, 257 So.

3d 1205, 1208 (Fla. 1st DCA 2018). (agencies "may not enforce an unadopted rule against a party's substantial interests").

100. The pause is a rule within the meaning of § 120.52(16): (1) it is an agency statement — announced in writing in INFO 25-019, issued under the Executive Director's name and authority, as alleged in Paragraph 52; (2) it is generally applicable — directed to FLHSMV personnel statewide and applied categorically to every non-domiciled CDL and CLP holder and applicant in Florida; (3) it prescribes policy — the categorical refusal to process, issue, or renew an entire class of credentials until federally defined conditions are satisfied; (4) it is being used to determine party rights — applied in licensing transactions at FLHSMV customer service centers statewide to deny applications and refuse renewals; and (5) it was adopted without compliance with any rulemaking procedure under § 120.54, including the emergency-rule procedure of § 120.54(4).

101. INFO 26-005 is independently a rule within the meaning of § 120.52(16) and independently violates Chapter 120. By drawing substantive eligibility distinctions among applicants by visa category — resuming issuance for H-2A, H-2B, and E-2 holders while continuing to exclude all EAD holders, TPS holders, asylees, and refugees — INFO 26-005 even more plainly prescribes policy and determines party rights than the original bare pause, and it too was issued without notice of proposed rulemaking, without opportunity for public comment, and without any of the procedural protections Chapter 120 requires. See Fla. Stat. § 120.54. Putting a previously unwritten policy in writing does not transform an unadopted rule into an adopted one; it documents the violation.

102. Section 322.31, Florida Statutes — which channels review of individual final orders of the department to certiorari in the circuit courts — does not displace this Count. This Count does

43

not seek review of any final order; it challenges agency statements of general applicability under Fla. Stat. §§ 120.52(16) and 120.56(4). Indeed, FLHSMV issued no final order to any Plaintiff at all, as alleged in Paragraph 56, so the certiorari channel § 322.31 provides was never engaged and was never available to any Plaintiff. Schluter itself sustained a Chapter 120 challenge to this same agency's unpromulgated policy. 705 So. 2d at 84.

103. The Chapter 120 violations alleged in this Count are complete on their own terms and stand independent of any federal-law question: FLHSMV implemented a categorical suspension and a visa-category eligibility scheme through unadopted rules, and no federal development — whether the Final Rule survives or falls — can retroactively supply the rulemaking that Chapter 120 required. No relief sought under this Count requires any ruling concerning the Final Rule or the CAP.

104. FLHSMV is applying the unadopted rules to determine the rights of Plaintiffs by: (a) denying applications for initial non-domiciled CDLs and CLPs; (b) refusing to process renewals of existing non-domiciled CDLs and CLPs; and (c) declining to accept or adjudicate any non-domiciled CDL or CLP application from any EAD-holding, TPS-holding, asylee, or refugee applicant at FLHSMV customer service centers statewide. Each such action violates Fla. Stat. § 120.56(4) and Schluter, 705 So. 2d at 84.

105. To the extent this Count may be adjudicated in this forum, the pause and INFO 26-005 should be declared invalid as unadopted rules and their enforcement against Plaintiffs enjoined. In the alternative, this Count is preserved for presentation to the Florida Division of Administrative Hearings by petition under Fla. Stat. § 120.56(4), and nothing herein waives Plaintiffs' right to proceed in that forum.

## COUNT IV

### In the Alternative — Violation of the Florida APA: Invalid Exercise of Delegated Legislative Authority, Fla. Stat. § 120.52(8)

### (Against Defendants FLHSMV and Kerner)

106. This Count is pleaded in the alternative to Counts I and II, and only to the extent the Court may adjudicate it consistent with the Eleventh Amendment, as set forth in Paragraph 11. Plaintiffs incorporate by reference the allegations contained in Paragraphs 34 through 35 (identifying Defendants), Paragraphs 39 through 40 (Florida's statutory issuance and procedural framework), and Paragraphs 51 through 67 (FLHSMV's pause, INFO 25-019, and INFO 26-005), as though fully set forth herein.

107. Under Fla. Stat. § 120.52(8), a rule is an "invalid exercise of delegated legislative authority" if, among other things: the agency has exceeded its grant of rulemaking authority, § 120.52(8)(b); the rule enlarges, modifies, or contravenes the specific provisions of law implemented, § 120.52(8)(c); the rule is vague, fails to establish adequate standards for agency decisions, or vests unbridled discretion in the agency, § 120.52(8)(d); the rule is arbitrary or capricious, § 120.52(8)(e); or the rule is not supported by competent substantial evidence, § 120.52(8)(f). Any one criterion suffices.

108. Arbitrary and capricious, § 120.52(8)(e). The pause is arbitrary and capricious as a matter of state law, independent of any federal-law question. FLHSMV maintained a blanket suspension of an entire credential class for more than four months after the D.C. Circuit stayed the IFR and restored the pre-IFR framework under which Florida had lawfully issued these credentials for years, as alleged in Paragraph 60, and it has offered no Florida-specific safety, fitness, or compliance finding and no factual record to justify the pause at any point. The sole Florida-

specific reason FLHSMV ever articulated — the credential-redesign and vendor-system objective recited in the November Update, as alleged in Paragraph 60 — cannot justify a categorical, open-ended suspension of an entire class of occupational credentials: an administrative card-redesign project is not a lawful basis to deny qualified applicants their livelihoods indefinitely, and it bears no rational relationship to any individual Plaintiff's fitness to drive. Even if the federal rule were valid, FLHSMV's maintenance of an open-ended, standardless moratorium with no defined endpoint, no criteria of Florida law, and no individualized adjudication would remain an arbitrary exercise of its delegated authority.

109. Exceeds rulemaking authority, § 120.52(8)(b). Chapter 322, Florida Statutes, vests FLHSMV with authority to issue commercial driver's licenses upon satisfaction of prescribed eligibility criteria. Nothing in Chapter 322 authorizes FLHSMV to impose a categorical, open-ended moratorium on an entire credential class, or to condition issuance on federal visa category, without any individualized determination of ineligibility.

110. Contravenes the law implemented, § 120.52(8)(c). By categorically refusing to process any non-domiciled CDL application from Plaintiffs — regardless of whether the applicant has met every statutory requirement — the pause and INFO 26-005 enlarge, modify, and contravene the mandatory issuance provisions of Fla. Stat. §§ 322.12 and 322.54, quoted in Paragraph 39. The pause likewise contravenes the individualized notice and final-order procedures of Fla. Stat. §§ 322.251 and 322.31, which FLHSMV bypassed entirely, as alleged in Paragraphs 55 and 56. Florida's years-long practice of issuing non-domiciled CDLs to qualified applicants under this same framework confirms that the framework contemplates issuance and that the pause operates in direct derogation of it.

46

111. No federal mandate supplies a defense to this Count. Federal law prescribes eligibility criteria for non-domiciled credentials; it does not relieve FLHSMV of Florida's procedural requirements governing how credential action is taken, does not require the suspension of processing for applicants whom the federal rules themselves deem eligible, as alleged in Paragraph 58, and required nothing at all during the November 13, 2025 to March 16, 2026 period alleged in Paragraph 60. The breadth of the pause, its manner of adoption, and its maintenance during that period were state policy choices for which Chapter 120 compliance was required, as was adherence to the notice and final-order procedures of Fla. Stat. §§ 322.251 and 322.31, which no federal rule displaced.

112. Vague and standardless, § 120.52(8)(d). The pause provides no standards, criteria, or timeline for its conclusion as to Plaintiffs. As confirmed by FLHSMV's own notices, the conditions for any further resumption are set entirely at FMCSA's discretion, vesting unbridled, unreviewable discretion in an entity outside Florida law to determine when, if ever, Plaintiffs may again access a Florida occupational credential.

113. Not supported by competent substantial evidence, § 120.52(8)(f). FLHSMV has produced no rulemaking record, no factual findings, and no evidentiary basis for the categorical suspension. The complete absence of any record is itself dispositive: there is no record from which any reviewing tribunal could assess whether FLHSMV's action is supported by evidence, because FLHSMV compiled none before acting.

114. The pause and INFO 26-005 satisfy each of the foregoing criteria independently, and any one is sufficient. To the extent this Count may be adjudicated in this forum, the pause and INFO 26-005 should be declared invalid exercises of delegated legislative authority and their

47

enforcement against Plaintiffs enjoined; in the alternative, this Count is preserved for presentation in an appropriate state forum.

## COUNT V

### In the Alternative — Violation of Article I, Sections 2 and 9 of the

### Florida Constitution — Due Process and Equal Protection

### (Against Defendants FLHSMV and Kerner)

115. This Count is pleaded in the alternative to Counts I and II, and only to the extent the Court may adjudicate it consistent with the Eleventh Amendment, as set forth in Paragraph 11. Plaintiffs incorporate by reference the allegations contained in Paragraphs 15 through 33 (identifying Plaintiffs), Paragraphs 34 through 35 (identifying Defendants), Paragraphs 51 through 67 (FLHSMV's pause), and Paragraphs 68 through 75 (harm to Plaintiffs), as though fully set forth herein.

116. Article I, Section 2 of the Florida Constitution provides: "All natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property." Article I, Section 9 provides: "No person shall be deprived of life, liberty or property without due process of law."

117. The due process guarantee of Article I, Section 9 requires meaningful notice and a meaningful opportunity to be heard before a state agency deprives an individual of a protected property or liberty interest. See Dep't of Law Enforcement v. Real Property, 588 So. 2d 957, 960 (Fla. 1991). The right to pursue a lawful occupation and to be rewarded for industry is among the inalienable rights protected by Article I, Section 2. See State v. J.P., 907 So. 2d 1101, 1109–10 (Fla. 2004).

118. FLHSMV's pause deprives Plaintiffs of their property interests in their CDLs and CLPs and their right to pursue their occupation and be rewarded for industry without any process of law: no individualized notice by the means Fla. Stat. § 322.251 prescribes, no final order citing a statutory basis, no advisement of the right to certiorari review under Fla. Stat. § 322.31, no opportunity to be heard, no administrative appeal, and no criteria or timeline by which Plaintiffs could seek reinstatement, as alleged in Paragraphs 55 and 56. These process deficits are independently evidenced by FLHSMV's failure to follow any rulemaking procedure under the Florida APA — including the emergency rulemaking provisions of Fla. Stat. § 120.54(4) — before implementing the pause, as alleged in Counts III and IV. See Dep't of Highway Safety & Motor Vehicles v. Schluter, 705 So. 2d 81, 84 (Fla. 1st DCA 1997).

119. Florida's equal protection guarantee under Article I, Section 2 is analyzed under a framework consistent with the federal Equal Protection Clause. See Sasso v. Ram Prop. Mgmt., 452 So. 2d 932, 934 (Fla. 1984); N. Fla. Women's Health & Counseling Servs., Inc. v. State, 866 So. 2d 612, 625 (Fla. 2003), receded from on other grounds by Planned Parenthood of Sw. & Cent. Fla. v. State, 384 So. 3d 67 (Fla. 2024). FLHSMV continues to process CDL transactions for domiciled applicants of every description — and, since INFO 26-005, for non-domiciled applicants holding three favored visa categories — while categorically refusing to process applications from Plaintiffs, who have satisfied the identical requirements of Florida law. This differential treatment serves no legitimate state interest, for the reasons alleged in Count II, and violates Article I, Section 2.

120. To the extent this Count may be adjudicated in this forum, Plaintiffs are entitled to declaratory and injunctive relief; in the alternative, this Count is preserved for presentation in an appropriate state forum.

49

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

a) Consolidate Plaintiffs' claims for hearing and trial pursuant to Federal Rule of Civil Procedure 42(a);

b) Enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that FLHSMV's pause, as adopted, maintained, and applied to Plaintiffs — including its continued categorical exclusion of Plaintiffs through INFO 26-005 — violates the Due Process Clause of the Fourteenth Amendment and denies Plaintiffs the equal protection of the laws in violation of the Fourteenth Amendment;

c) In the alternative, and to the extent consistent with the Eleventh Amendment, enter a declaratory judgment declaring that the pause and INFO 26-005 are unadopted rules and invalid exercises of delegated legislative authority under the Florida APA and violate Article I, Sections 2 and 9 of the Florida Constitution;

d) Enter a preliminary injunction, on an expedited basis, and, following adjudication on the merits, a permanent injunction, running against Defendant Kerner in his official capacity and all persons acting under his direction: (i) enjoining the continued enforcement of the pause and of INFO 26-005's categorical exclusion as to Plaintiffs; (ii) ordering the resumption of acceptance and processing of Plaintiffs' applications for issuance and renewal of non-domiciled CDLs and CLPs under the eligibility criteria prescribed by Florida law; (iii) ordering that Plaintiffs' pending applications be processed within thirty (30) days; and (iv) ordering the reinstatement, without additional testing or fees, of Plaintiffs' CDLs and CLPs that expired solely by operation of the pause;

e) Retain jurisdiction to ensure compliance with the Court's orders;

f) Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and, to

the extent applicable, Fla. Stat. § 120.595; and

g) Award such other and further relief as this Court deems just, proper, and equitable.

Dated: June 14, 2026

Respectfully submitted,
/s/ Arno Lemus
Arno Javier Lemus
FL Bar No.: 0103075
Attorney E-mail: arno@lemus.org
Lemus Law Group
1024 NW 102 PL
Miami, FL 33172
Telephone: (786) 816-2795
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2026, a true and correct copy of the foregoing was served via

CM/ECF on all parties or their counsel of record as required by the Federal Rules of Civil

Procedure and the Local Rules of the United States District Court for the Southern District of

Florida.

/s/ Arno Lemus
Arno Lemus, Esq.

[1] Plaintiffs proceed under pseudonyms and will move for leave to do so shortly after the filing of this First Amended Complaint, following the conferral with Defendants required by Local Rule 7.1(a)(3).