**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No.: 1:26-cv-22615-JB

R.K.G.*, et al.,

Plaintiffs,


v.


DAVE KERNER, Executive Director, Florida

Highway Safety and Motor Vehicles, in his

official capacity, et al., Defendants.

_____/

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR**
**LEAVE TO PROCEED UNDER PSEUDONYMS**

Plaintiffs' motion asks the Court to do what courts in this Circuit and District have done

for lawfully present non-citizens who face a documented, individualized risk of retaliation if

publicly named: permit them to litigate by their initials while disclosing their true identities to

Defendants. This motion is supported by declarations with particularized facts establishing a

concrete fear of retaliatory enforcement, targeting, and harm in the present climate. Measured

against the totality of the circumstances that *Francis* and *Chiquita Brands* require, the balance

favors the narrow relief sought. The motion should be granted.

### I.      Defendants identify no prejudice

Plaintiffs have offered to disclose their true identities to Defendants and the Court, subject

to a protective order, and to provide any identity documents Defendants require throughout this

litigation. Mot. 7–8. Defendants will therefore possess the same information they would have were

1

Plaintiffs named in the caption, and may test standing, conduct discovery, and cross-examine every allegation. *See Doe v. Hobson*, 300 F.R.D. 576, 578–79 (M.D. Ala. 2014); *accord Doe v. Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp. 3d 1241 (S.D. Fla. 2019) (defendant's knowledge of a pseudonymous plaintiff's identity forecloses any claim of fundamental unfairness); *Doe v. Ricky Patel, LLC*, 2020 U.S. Dist. LEXIS 252754 (M.D. Fla. 2020) (granting anonymity where the plaintiff agreed to disclose her identity to defendants under a protective order, "thus ameliorating any potential negative impact upon the Defendants' ability to defend themselves"). The Eleventh Circuit has recognized that a defendant's "general plea for 'openness' is not convincing" when weighed against a documented need for anonymity, *Chiquita Brands*, 965 F.3d at 1247 (quoting *Plaintiff B v. Francis*, 631 F.3d 1310, 1318 (11th Cir. 2011)), and that the absence of prejudice is itself a factor weighing in the movant's favor, *id.* at 1247 n.5. Defendants' Response offers nothing beyond that general plea.

## II.   Defendants raise an argument Plaintiffs did not make

Defendants devote much of their Response to the proposition that "[c]hallenging government activity does not weigh in favor of anonymity," citing *Doe v. Frank* and *Roe v. Aware Woman Center for Choice, Inc.* Response 2–3. Plaintiffs do not contend otherwise. The motion does not argue that the first *Francis* factor is dispositive, or that challenging a state agency on standing alone overcomes the presumption of openness. It argues that this factor is one input into a totality-of-the-circumstances balance, and that the decisive weight comes from the threat-of-harm consideration addressed below. *See In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 n.5 (11th Cir. 2020) (the enumerated factors are "merely a few of many factors that a court must consider," and a court must review "all the circumstances of a given case").

2

The heightened scrutiny applied to anonymous suits against private parties exists because naming protects a private defendant against reputational and economic harm. *Frank*, 951 F.2d at 323–24. *See also Freedom From Religion Found., Inc. v. Emanuel Cnty. Sch. Sys.*, 109 F. Supp. 3d 1353, 1357 (S.D. Ga. 2015) ("It is not that suing the government weighs in favor of granting a request for anonymity; rather, the operative principle is that a suit against a private party weighs against a plaintiff's request for anonymity." (emphasis in original)); *accord Does v. Swearingen*, 2019 U.S. Dist. LEXIS 156396 (M.D. Fla. Sept. 13, 2019) (government-defendant posture merely mitigates prejudice because the suit poses no risk of injury to the government's reputation).

### III.   The "utmost intimacy" factor is not at dispute

Defendants do not confront the role that the sensitivity of immigration-status information actually plays in the motion: it is not advanced as an independent "utmost intimacy" basis, but as a circumstance that aggravates the threat-of-harm factor, because compelled public disclosure of each Plaintiff's non-citizen status, county of residence, and dependence on federal work authorization is precisely what creates the searchable, permanent record that exposes them to retaliation. *Farmworker Ass'n of Fla., Inc. v. DeSantis*, 716 F. Supp. 3d 1312 (S.D. Fla. 2024), holds that status is not utmost-intimacy information. However, its silent on whether public identification creates a risk of harm.

### IV.   Plaintiffs' individualized declarations establish a concrete risk of harm that distinguishes this case from the authorities Defendants invoke.

Defendants' central argument is that Plaintiffs rely on "speculation" and have not shown a "real threat of physical harm." Response 4–5 (quoting *Chiquita Brands*, 965 F.3d at 1247). That argument fails for three independent reasons.

First, the record here is individualized, not generalized. The distinction Defendants elide is the very one on which *Chiquita Brands* turned. There, the pseudonymous movants offered only "expert affidavits which generally discuss[ed] the volatile political landscape" in Colombia, and critically, "hundreds of plaintiffs" had "litigated [the] case under their true names for over a decade without incident." On that record, the generalized country-conditions evidence could not outweigh the concrete, contrary experience of the named plaintiffs. Here there is no such contrary record. Fifteen of the nineteen Plaintiffs have submitted individual, sworn declarations describing the specific harms each fears from public identification, not a generic account of conditions, but each declarant's own circumstances, dependents, and exposure. *See* Exs. A–O. That is the particularized showing *Chiquita Brands* and *Farmworker* found absent.

Second, the threat-of-harm consideration is not limited to physical violence, and the feared harm here is neither vague nor hypothetical. Defendants treat "real threat of physical harm" as the only cognizable harm. But the totality inquiry asks whether public identification would expose a litigant to retaliation or harm of a kind that the presumption of openness should not require him to bear and retaliatory enforcement action directed at a Plaintiff's lawful status, and at family members whose status is precarious, is a concrete harm, not a reputational inconvenience. The fear is not, as Defendants suggest, a "generalized fear of hostility in the community." *Cf. Farmworker*, 716 F. Supp. 3d at 1323. It is a fear that placing a roster of identified, work-authorized non-citizens on a permanent public docket in connection with a high-profile, immigration-adjacent lawsuit will draw targeted attention to individuals whose continued presence depends on the status of federal documents. That fear is grounded in the documented realities of the current enforcement environment, which makes the risk of being singled out following public identification concrete rather than imagined.

Third, Defendants' treatment of the most acute declaration confirms rather than refutes the showing. Defendants concede that Plaintiff R.G.A. "discusses fleeing Venezuela after receiving death threats," but dismiss the showing because he has been in this country "for many years." Response 5. The passage of time does not extinguish the risk; it is the prospect of *renewed locatability* that R.G.A. identifies. A declarant who fled a regime after being threatened and detained as a purported traitor has a particularized, non-speculative basis to fear that a permanent, searchable public record bearing his identity will render him findable by those he fled. *See* Ex. M (Decl. of R.G.A.) ¶¶ 4–5. Nor does R.G.A. stand alone. Other declarants describe dependents whose own status is in jeopardy, including a household in which a spouse's humanitarian parole has been revoked and a young child depends entirely on the Plaintiff. *See* Ex. N (Decl. of S.R.C.) ¶ 5. These are the "specific" and "particularized" facts the case law requires.

The decisions denying pseudonymity confirm the distinction rather than undermine it: each refused anonymity because the movant offered only generalized embarrassment or reputational concern, without the particularized threat shown here. *See Doe v. Garland*, 341 F.R.D. 116, 118 (S.D. Ga. 2021) (mental-health allegations against a government defendant insufficient absent any risk of physical harm); *Doe v. Emory Univ.*, 734 F. Supp. 3d 1369 (N.D. Ga. 2024) (denying anonymity where the plaintiff was not challenging government activity, identified no threat of physical violence, and disclosed no information of the utmost intimacy); *Doe v. Predator Catchers, Inc.*, 343 F.R.D. 633 (M.D. Fla. 2023) (mere embarrassment insufficient absent matters of a highly sensitive and personal nature, a real danger of physical harm, or injury resulting from disclosure). Plaintiffs' sworn declarations supply precisely what those movants lacked.

Finally, the relief remains subject to the Court's continuing control. Plaintiffs do not seek to litigate in secret or to foreclose revisiting their status; the Court may modify or revoke

pseudonymity as the case develops, including on a future defense challenge. *See id.* at 1245–47. That continuing supervision confirms that the limited relief sought, initials on the public docket, true identities disclosed to Defendants and the Court, is fully consistent with the presumption of openness.

## CONCLUSION

For the foregoing reasons, and those set forth in the motion, Plaintiffs respectfully request that the Court grant leave for Plaintiffs to proceed under the pseudonyms set forth in the caption, enter a protective order governing the disclosure and handling of Plaintiffs' true identities, and grant such other relief as the Court deems just and proper.

Dated: July 1, 2026

Respectfully submitted,

/s/ Arno Lemus
Arno Javier Lemus
FL Bar No.: 0103075
Lemus Law Group
1024 NW 102 PL
Miami, FL 33172
Telephone: (786) 816-2795
arno@lemus.org
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS was filed via CM/ECF and served on all counsels of record on this 1st day of July 2026.

/s/ Arno J. Lemus
Arno Javier Lemus
*Attorney for Plaintiffs*